IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
────────────────────────────────

EON SHEPHERD,

                        Plaintiff,         Civil Action No.
                                               9:10-CV-1524 (TJM/DEP)

       v.

SUPERINTENDENT LEMPKE, *et al.*,

                        Defendants.

────────────────────────────────

APPEARANCES:                     OF COUNSEL:

FOR PLAINTIFF:

BOND SCHOENECK & KING        GEORGE H. LOWE, ESQ.
One Lincoln Center                 UPNIT K. BHATTI, ESQ.
Syracuse, NY 13202-1355

FOR DEFENDANT:

HON. ERIC T. SCHNEIDERMAN   CATHY Y. SHEEHAN, ESQ.
New York State Attorney General   ORIANA L. CARRAVETTA, ESQ.
The Capitol                     Assistant Attorneys General
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Eon Shephard, an experienced *pro se* litigant who has filed multiple actions in this and other courts as a New York State prison inmate. Plaintiff's complaint, as amended, asserts a variety of causes of action against forty-one employees of the New York State Department of Corrections and Community Supervision ("DOCCS") based upon events occurring between April 2008 and November 2010 at five separate prison facilities operated by the DOCCS.

In defense of plaintiff's claims, defendants have argued, *inter alia*, that plaintiff failed to exhaust the available administrative remedies before commencing suit. The matter has been referred to me for the purpose of holding an evidentiary hearing and issuing a report and recommendation addressing the exhaustion issue. Based upon the evidence adduced at that hearing, I render the following recommended findings.

I.     BACKGROUND

This action has an extensive procedural history. It was initially filed in the Southern District of New York in October 2010, but was subsequently transferred to this district by order issued by Chief District Judge Loretta A. Preska on December 10, 2010. Dkt. Nos. 1-3. On May 11, 2011, Senior

District Judge Thomas J. McAvoy conducted an initial review of plaintiff's original complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A and issued a decision dismissing a number of his claims. Dkt. No. 5. Plaintiff subsequently filed an amended complaint on August 17, 2011. Dkt. Nos. 45, 78. During the pendency of the action, plaintiff has filed four separate preliminary injunction motions, all of which have been denied by the court. Dkt. Nos. 49, 78, 159, 161, 163, 168, 189, 192.

In his amended complaint, which serves as the currently operative pleading, plaintiff identifies numerous defendants by name and others as "Doe" defendants. Dkt. No. 45 at 2-3. Plaintiff's claims arise out of events occurring at five separate prisons, including Upstate, Clinton, Five Points, Shawangunk, and Green Haven Correctional Facilities. *See generally* Dkt. No. 45. Generally speaking, Shepherd alleges that he was sexually and physically assaulted, and deprived of his freedom of religion, procedural due process, access to the courts, and adequate medical care. *Id.*

On May 10, 2014, defendants moved for the entry of partial summary judgment dismissing certain of plaintiff's claims on a variety of grounds. Dkt. No. 174. Following the completion of briefing with respect to that motion, I issued a report on February 23, 2015, recommending that

the motion be granted, in part. Dkt. No. 194. Judge McAvoy adopted the report in a decision and order dated March 18, 2015.[1] Dkt. No. 195.

Defendants thereafter filed a motion on June 26, 2015, requesting that plaintiff's claims be divided into three categories and that each group be tried separately. Dkt. No. 197. As a result of that motion, I issued a report on August 17, 2015, recommending that the motion be granted and that the claims be divided and tried separately. Dkt. No. 199. In my report, I noted that, based upon my earlier report and recommendation and its approval by Judge McAvoy, the court intended that the following claims should remain in the case for trial:

| Defendant | Cause of Action | Prison Facility |
|---|---|---|
| Dr. Amatucci | Medical Indifference | Downstate |
| Supt. Artus | Medical Indifference, Religious Interference | Clinton |
| R.N. Atkinson | Retaliation | Upstate |
| Sgt. Barber | Failure to Protect | Five Points |
| N. Bezio | Due Process | DOCCS Hq. |
| C.O. Belsio | Excessive Force, Religious Interference | Upstate |

[1] Due to the formatting of my report, confusion was engendered as to which of the forty-one defendants named in plaintiff's amended complaint were to remain in the action. By way of example, although it was clear from my report in the summary paragraph that I was recommending that plaintiff's claims against defendants Fischer and Wright be dismissed based upon lack of personal involvement, the recommendation portion of my decision and, consequently, the order portion of Judge McAvoy's subsequent decision, did not explicitly reference those individuals. Similarly, while in my report I recommended dismissal of plaintiff's deliberate medical indifference claims against certain specified defendants, I failed to identify which of those defendants were named by plaintiff solely in connection with his medical indifference claims and, consequently, should also be dropped as defendants from the lawsuit.

| Defendant | Cause of Action | Prison Facility |
|---|---|---|
| C.O. Bower | Excessive Force, Failure to Protect, Retaliation | Five Points |
| C.O. Cambria | Excessive Force | Unknown |
| C.O. Carlee | Religious Interference, Retaliation, Excessive Force | Five Points |
| R.N. Chesbrough | Retaliation | Upstate |
| C.O. Cioffa | Excessive Force | Five Points |
| Deputy Colvin | Excessive Force, Religious Interference, Retaliation | Upstate |
| Deputy Cunningham | Due Process | Green Haven |
| C.O. Evans | Excessive Force, Religious Interference | Five Points |
| R.N. Fairchild | Retaliation | Upstate |
| Dr. Hawthorne[2] | Medical Indifference | Unknown |
| R.N. Holmes | Retaliation | Upstate |
| Sgt. Jones | Failure to Protect, Medical Indifference | Five Points |
| R.N. Lashway | Medical Indifference | Clinton |
| Supt. Lempke | Excessive Force, Religious Interference, Retaliation | Upstate |
| Sgt. Menard | Excessive Force, Religious Interference | Clinton |
| C.O. Prebalick | Excessive Force, Religious Interference, Retaliation | Five Points |
| Hearing Officer Ramus | Due Process | Five Points |
| Sgt. Rowe | Failure to Protect | Upstate |
| C.O. Rozwell | Excessive Force, Religious Interference | Upstate |

---

[2]      The individuals identified in plaintiff's amended complaint as defendants Hawthorne and Lashway are the same person. Dkt. No. 46. Neither the parties nor the court, however, realized this reality at the time the parties agreed that defendant Hawthorne should be dismissed from the action, Dkt. No. 224. Accordingly, the court's text order dismissing defendant Hawthorne is hereby vacated, and the medical indifference claims asserted in plaintiff's amended complaint against defendant Hawthorne (paragraphs 6, 93, 102) should be deemed asserted against defendant Lashway for purposes of trial.

| Defendant | Cause of Action | Prison Facility |
|---|---|---|
| Supt. Rock[3] | Religious Interference | Upstate |

Dkt. No. 199 at 7-9. After identifying those remaining claims, I

recommended that they be separated into the following three groups for

purposes of trial:

> (1) All claims involving events at the Clinton Correctional Facility, plus a medical indifference claim against Dr. Amatucci arising from events at the Downstate Correctional Facility, and related claims against defendants Artus, Amatucci, Lashway, and Menard.

> (2) All claims involving events at the Five Points Correctional Facility against defendants Barber, Bower, Carlee, Cioffa, Jones, Evans, Prebalick, and Ramus, plus plaintiff's due process claim against defendants Cunningham and Bezio arising from the events at the Green Haven Correctional Facility.[4]

> (3) All remaining claims, including those relating to events at the Upstate Correctional Facility, plus an excessive force cause of action against defendant Cambria based upon the events at an undetermined location. This third trial will include the following defendants: Belsio, Cambria, Colvin, Holmes, Fairchild, Atkinson, Chesbrough, Lempke, Rock, Rowe, and Rozwell.[5]

---

[3]    Defendant Rock was inadvertently omitted from the list of remaining claims.

[4]    Defendant Evans was inadvertently omitted from the list of defendants to be included in the second of three trials. Dkt. No. 199 at 14; Dkt. No. 202 at 3.

[5]    The claims asserted against defendant Hawthorne was originally included in this last group. Dkt. No. 199 at 12-13. Because it is now clear that defendants Lashway and Hawthorne are the same person, all claims asserted against defendant Hawthorne and Lashway that survive defendants' pending motion to dismiss should be included in group one for purposes of trial.

My report and recommendation was adopted by Judge McAvoy on September 22, 2015. [Dkt. No. 202](#).

## II.  PROCEDURAL HISTORY

Following the issuance of Judge McAvoy's severance order, defendants requested an evidentiary hearing regarding the issue of exhaustion as it relates to "several claims concerning all three trials." [Dkt. No. 204](#). Based upon that request, the matter was referred to me for the purpose of conducting an evidentiary hearing pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011), to determine whether plaintiff did in fact exhaust available administrative remedies with respect to his claims and, if not, whether his failure to fulfill the exhaustion requirement should be excused. [Dkt. No. 2](#)05.

An evidentiary hearing was subsequently conducted on July 20, 2016. Plaintiff was represented at that hearing by *pro bono* counsel assigned by the court.[6] Following the hearing, the parties requested and were afforded the opportunity to submit post-hearing memoranda addressing the exhaustion issue. Dkt. Nos. 248, 249. The matter is now ripe for the issuance of a report and recommendation pursuant to 28

---

[6]    On February 19, 2016, George H. Lowe, Esq., was appointed to represent plaintiff, *pro bono*. [Dkt. No. 220](#). The court extends its thanks to former Magistrate Judge Lowe and his colleague, Upnit Bhatti, Esq., for agreeing to undertake representation of plaintiff in this matter and for their energetic, highly competent, and professional efforts in carrying out that assignment.

U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.     DISCUSSION

    A.     Exhaustion of Administrative Remedies: Controlling Legal Principles

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the

PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, --- F. App'x ----, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016).[7] "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[8]

In New York, state prison inmates have a grievance procedure available to them, which is designated as the Inmate Grievance Program ("IGP"). *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.*

---

[7]     All unreported cases cited to in this report have been appended for the convenience of the *pro se* plaintiff.

[8]     While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "'in a substantive sense,'" an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

Representatives of the inmate grievance resolution committee ("IGRC")[9] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[10] *Id.* at § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. *Id.* at § 701.5(d)(2)(i).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the

---

[9] The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

[10] Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." *Id.* at § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[11] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is presented when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

B.    Plaintiff's Remaining Claims

During the *Messa* hearing, plaintiff informed the court that he never intended to assert the following claims in his amended complaint: (1) failure-to-protect and retaliation against defendant Bower, and (2)

_____

[11]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

interference with religion against defendant Evans. Dkt. No. 249-2 at 3, 93. I therefore recommend that those claims be dismissed.

In addition, the parties now agree that the following three claims were properly exhausted prior to commencement of suit: (1) retaliation against defendant Carlee, (2) due process against defendant Cunningham, and (3) due process against defendant Ramus. Dkt. No. 249-2 at 3-5. I therefore recommend that any order issued by the court acting upon this report confirm that those claims are properly exhausted and may proceed to trial.

The claims potentially implicated by defendants' exhaustion defense, together with the circumstances surrounding plaintiff's efforts to exhaust available administrative remedies, have been helpfully organized and summarized in a chart prepared by plaintiff's counsel, and received in evidence at the recent hearing.[12] Exh. P-Q. Those claims are divided into four groupings, each of which includes common circumstances insofar as exhaustion is concerned. I have analyzed each group separately below.[13]

---

[12]    The chart also appears in the record as Dkt. No. 240.

[13]    There are several other claims that were not impacted by defendants' exhaustion defense and, therefore, were neither included in plaintiff's chart nor addressed at the exhaustion hearing. Accordingly, the following claims remain pending for trial notwithstanding any court order regarding defendants' exhaustion defense:

1.    Group One

The claims in group one are asserted against facility superintendents in their supervisory capacities and include the following claims:

| GROUP 1 | | | | |
|---|---|---|---|---|
| **Claim No.** | **Defendant** | **Nature of Claim** | **Facility** | **Amended Complaint ¶** |
| 3 | Artus | Medical Indifference | Clinton | 31, 104-05, 108-09 |
| 4 | Artus | Religious Freedom | Clinton | 31, 104-05, 108-09 |
| 16 | Colvin | Excessive Force | Upstate | 86, 105, 108 |
| 17 | Colvin | Religious Freedom | Upstate | 86, 105, 108 |
| 18 | Colvin | Retaliation | Upstate | 86, 105, 108 |
| 26 | Lempke | Excessive Force | Upstate | 86, 105, 108 |
| 27 | Lempke | Religious Freedom | Upstate | 86, 105, 108 |
| 28 | Lempke | Retaliation | Upstate | 86, 105, 108-09 |

Plaintiff admits that he did not file any grievances naming the three superintendent-defendants in this group. Dkt. No. 249-2 at 8-13. He contends, however, that doing so would have been futile because the grievances, either in the first instance or on appeal, would have been reviewed by the superintendents whose actions are challenged. *Id.* It is

| **Defendant** | **Cause of Action** | **Prison Facility** |
|---|---|---|
| Amatucci | Medical Indifference | Downstate |
| Barber | Failure to Protect | Five Points |
| Bezio | Due Process | DOCCS Hq. |
| Cambria | Excessive Force | Unknown |
| Chesbrough | Retaliation | Upstate |
| Holmes | Retaliation | Upstate |
| Rock | Religious Interference | Upstate |
| Lashway (formerly sued as Hawthorne) | Medical Indifference | Clinton |

well established, however, that futility is not a basis for failing to exhaust available administrative remedies. *See, e.g., Giano v. Goord*, 250 F.3d 146, 150-51 (2d Cir. 2001) (rejecting the plaintiff's argument that he should be excused from exhausting the admittedly available administrative remedies based on futility because "the alleged ineffectiveness of the administrative remedies that are available does not absolve a prisoner of his obligation to exhaust such remedies"); *Nussle v. Willette*, 224 F.3d 95, 99 (2d Cir. 2000), *reversed on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002), ("The PLRA . . . does not make 'effectiveness' of administrative remedies a precondition to the exhaustion requirement."); *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998) ("[T]he courts cannot simply waive [the exhaustion] requirements where they determine they are futile or inadequate."); *Davidson v. Talbot*, No. 01-CV-0473, 2005 WL 928620, at *8 (N.D.N.Y. Mar. 31, 2005) (Treece, M.J.), *report and recommendation adopted by* 2006 WL 1877144 (N.D.N.Y. July 5, 2006) (Scullin, J.), ("Exhaustion is similarly required even if the prisoner asserts futility as an excuse."). Aside from the futility argument failing as a matter of law, the argument also does not provide for the possibility that plaintiff "still could have obtained relief from the CORC" even if the

superintendent-defendants denied his grievance. *Arce v. Keane*, No. 01-CV-2648, 2004 WL 439428, at *5 (S.D.N.Y. Mar. 9, 2004).

The more salient issue with respect to the claims in group one relates to the fact that each of the superintendents against whom the claims are asserted is sued based on his capacity as a supervisor. It is well settled that a supervisor cannot be liable under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior*." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright v. Smitth*, 21 F.3d 496, 501 (2d Cir. 1994). To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 554 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.

1995); *Wright*, 21 F.3d at 501.[14] Supervisor liability, however, is only a theory of liability, and is not itself a cause of action. *See Ashcroft*, 556 U.S. at 693 (Souter, J., dissenting) ("The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates[.]"). According to the Second Circuit, inmate-plaintiffs need not include, in their grievances, every legal theory upon which they later rely in a civil rights lawsuit. *See Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) ("In determining whether exhaustion has been achieved, we have drawn an analogy between the contents of an administrative grievance and notice pleading, explaining that as in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." (quotation marks and alteration

---

[14]    Subsequent to issuance of the Second Circuit's decision in *Colon*, the Supreme Court addressed the question of supervisory liability in its decision in *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 554 (2009). Although the issue has been discussed in several relatively recent decisions, the Second Circuit has yet to squarely address the impact of *Iqbal* upon the categories of supervisory liability identified in *Colon. See, e.g., Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) ("We express no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citation omitted)); *see also Reynolds v. Barrett*, 685 F.3d 193, 206 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit without the continuing vitality of the supervisory liability test set forth in [*Colon*,] . . . but the fate of *Colon* is not properly before us[.]"). In the absence of any authority to the contrary, I have assumed for purposes of this report that *Colon* remains binding on district courts in this circuit.

omitted)). Relatedly, the Supreme Court has explicitly advised lower courts that inmate-plaintiffs need not identify each and every defendant implicated in a civil rights lawsuit in grievances that predate the lawsuit. *See Jones v. Bock*, 549 U.S. 199, 217 (2007) ("[N]othing in the [PLRA] imposes a 'name all defendants' requirement[.]"); *Espinal v. Goord*, 558 F.3d 119, 125-27 (2d Cir. 2009) (concluding that the PLRA does not require a New York state prisoner "to name particular officials who are allegedly responsible for misconduct[] in order to later bring suit against those officials in federal court"). Accordingly, so long as a plaintiff files and appeals to completion a grievance that relates to the underlying cause of action to which a theory of supervisory liability relates, that plaintiff has exhausted the available administrative remedies against the supervisor-defendant.

In this case, defendants contend that plaintiff failed to exhaust the available administrative remedies against defendants Artus, Colvin, and Lempke because he did not file any grievances that specifically identified them or complained of their conduct. *See* Dkt. No. 249-2 at 16 (defendants' counsel arguing that she "believe[s] that [she] could find case law to support the fact that you didn't name other people that you decided to name two years down the road when you filed your complaint, you didn't

grieve against those individuals"). Because the weight of authority regarding this issue suggests that inmate-plaintiffs need not file grievances identifying particular individuals or articulating a particular theory of liability (much less specifically grieve a supervisor theory of liability), I recommend that the court deny defendants' motion to dismiss the claims in group one.[15]

  2. Group Two

  Group two is comprised of claims that were ultimately fully exhausted, but the respective CORC decisions were not issued until after the commencement of this action. The following claims fall into this group:

| GROUP 2 | | | | |
|---------|---|---|---|---|
| **Claim No.** | **Defendant** | **Nature of Claim** | **Facility** | **Amended Complaint ¶** |
| 6 | Belsio | Religious Freedom | Upstate | 41, 42 |
| 8 | Atkinson | Retaliation | Upstate | 90, 91 |
| 25 | Lashway | Medical Indifference | Clinton | 75, 76 |
| 31 | Prebalick | Religious Freedom | Five Points | 35 |
| 36 | Rowe | Failure to Protect | Upstate | 43 |
| 37 | Rozwell | Excessive Force | Upstate | 43 |
| 38 | Rozwell | Religious Freedom | Upstate | 43 |

  The parties do not dispute that the claims in group two are now fully exhausted. *See, e.g.,* Dkt. No. 249 at 9. Defendants contend, however,

---

[15] In attacking the claims falling into group one, defendants have not argued that plaintiff failed to file grievances regarding the underlying constitutional deprivations. Accordingly, I have not scoured the available record to determine whether plaintiff did, in fact, file grievances addressing those violations.

that, because the claims were not fully exhausted at the time plaintiff filed his original complaint on or about October 25, 2010, plaintiff should be barred from litigating them in this action. *Id.* at 9-10. Plaintiff maintains that he satisfied the exhaustion requirement by fully exhausting the claims in this group by the time he filed his amended complaint on August 17, 2011. Dkt. No. 249-2 at 38-39.

Fifteen years ago, the Second Circuit held that exhausting administrative remedies subsequent to the commencement of a lawsuit will not salvage an otherwise premature filing. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002), ("[E]xhausting administrative remedies after a complaint is filed will not save a case from dismissal."). While acknowledging the potential judicial inefficiency of its holding, the court reasoned that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court." *Neal*, 267 F.3d at 123. In addition, in the event a plaintiff benefits from utilizing the administrative process, "the federal court will have wasted its resources adjudicating claims that could have been resolved with the prison grievance system at the outset." *Id.*

The law regarding this issue has not changed since *Neal*, and plaintiff in this case does not contend as much. S*ee, e.g., Snyder v. Whittier*, 428 F. App'x 89, 92 (2d Cir. 2011); *Toliver v. Stefnik*, No. 12-CV-0077, 2016 WL 3349316, at *4 (N.D.N.Y. June 15, 2016) (D'Agostino, J.). Plaintiff instead argues that he satisfied the PLRA's exhaustion requirement by exhausting his claims in group two prior to the filing of his amended complaint. Dkt. No. 249-2 at 38-39. This argument, however, ignores that the Second Circuit's decision in *Neal* involved a fact pattern that is identical to the one now presented to this court. In both cases, the plaintiffs filed an original complaint that asserted certain causes of action, and then later filed an amended complaint both asserting claims that were included in the original complaint and adding new ones.[16]

With respect to the claims in this case that fall into group two, plaintiff asserted the following claims both in his original and amended complaint: (1) retaliation against defendant Atkinson, (2) deliberate

---

[16]    It is not clear from the court's decision in *Neal* that the plaintiff had included new claims in his amended complaint that were not asserted in his original complaint. In his *amicus curiae* brief to the Second Circuit, however, the New York State Attorney General explained that the plaintiff's amended complaint included newly asserted deliberate medical indifference causes of action that were not originally pleaded. Amicus Brief, *Neal v. Goord*, 267 F.3d 116 (2d Cir. 2001) (No. 99-0253), 2001 WL 34121400, at *2-4. The Second Circuit affirmed the district court's dismissal of all of the plaintiff's claims, including the deliberate medical indifference causes of action, because none of them had been fully exhausted by the time the plaintiff filed his original complaint. *Neal*, 267 F.3d at 121-23.

medical indifference against defendant Lashway, and (3) religious interference against defendant Prebalick. Dkt. No. 2 at 16, 34-35, 37, 43-44; Dkt. No. 45 at 8, 18-19, 23. In his amended complaint, plaintiff also asserted the following causes of action that were not included in his original complaint: (1) religious interference against defendant Belsio, (2) failure to protect against defendant Rowe, (3) excessive force against defendant Rozwell, and (4) religious interference against defendant Rozwell. *Compare* Dkt. No. 2 *with* Dkt. No. 45 at 10. There is no doubt that, by the time plaintiff filed his amended complaint on August 17, 2011, he had fulfilled his exhaustion request with respect to all of the claims in group two. Dkt. No. 249 at 9. While some circuits analyzing this fact pattern have permitted plaintiffs to litigate the causes of action that were newly included in an amended complaint and fully exhausted by the time the plaintiffs filed the amended complaint, *Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010);[17] *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005), the Second Circuit squarely addressed those facts in *Neal* and concluded otherwise. Accordingly, I recommend that the claims in group two be

---

[17]     In *Rhodes*, the Ninth Circuit found that the plaintiff had exhausted the available administrative remedies with respect to the newly asserted claims included in the amended complaint because "'the filing of the amended complaint was the functional equivalent of filing a new complaint and it was only at that time that it became necessary to have exhausted all of the administrative remedies.'" *Rhodes*, 621 F.3d at 1006 (quoting *Barnes*, 420 F.3d at 678) (alterations omitted).

dismissed for failure to exhaust available administrative remedies before filing suit.[18]

### 3.  Groups Three and Four

Plaintiff alleges that he filed grievances in connection with the claims in groups three and four, in accordance with the IGP, but never received a response to those grievances and, therefore, those grievances were never processed, assigned a grievance number, or appealed to the CORC. The distinguishing factor between groups three and four is that plaintiff has produced what purport to be copies of the grievances – and letters related to those grievances – submitted by him pertaining to the claims in group three, whereas he has no supporting documentation with respect to the claims in group four. Groups three and four are comprised of the following claims:

---

[18]    Defendants argue that the grievances plaintiff identifies as being associated with claims 25 and 31 do not support or refer to the corresponding allegations in his amended complaint. Dkt. No. 249 at 11-12. While defendants' point in this regard appears to be well taken, it is unnecessary to address the argument in light of my recommendation that those claims be dismissed as not fully exhausted prior to commencement of suit.

| GROUP 3 | | | | |
|---|---|---|---|---|
| **Claim No.** | **Defendant** | **Nature of Claim** | **Facility** | **Amended Complaint ¶** |
| 9 | Bower | Sexual Harassment/Excessive Force | Five Points | 15 |
| 12 | Carlee | Religious Interference | Five Points | 34 |
| 14 | Carlee | Excessive Force | Five Points | 34 |
| 15 | Cioffa | Excessive Force | Five Points | 19, 20 |
| 20 | Evans | Excessive Force | Five Points | 20 |
| 22 | Fairchild | Retaliation | Upstate | 92 |
| 23 | Jones | Failure to Protect | Five Points | 21 |
| 29 | Menard | Excessive Force | Clinton | 28 |
| 30 | Menard | Religious Freedom | Clinton | 28 |
| 32 | Prebalick | Retaliation | Five Points | 19-22 |
| 33 | Prebalick | Sexual Harassment/Excessive Force | Five Points | 16 |

| GROUP 4[19] | | | | |
|---|---|---|---|---|
| **Claim No.** | **Defendant** | **Nature of Claim** | **Facility** | **Amended Complaint ¶** |
| 5 | Belsio | Excessive Force | Upstate | 41-42 |
| 7 | Belsio | Religious Interference | Upstate | 41-42 |
| 24 | Jones | Medical Indifference | Five Points | 87 |

Having reviewed the evidence and observed his demeanor, I conclude that, with limited exception, which will be discussed more below, plaintiff was not credible insofar as he testified that he submitted grievances concerning the incidents that are the basis for his claims in

---

[19] Originally, claim 21, asserted against defendant Evans alleging religious interference, was included in this group. After conferring with his counsel, however, plaintiff indicated during the hearing that he was withdrawing that claim against defendant Evans. Dkt. No. 249-2 at 93.

groups three and four. It is worth noting that, while plaintiff was able to produce alleged copies of the grievances and follow-up letters that relate to the claims in group three at the exhaustion hearing, those documents were not provided to defendants during the course of discovery. Dkt. No. 249-2 at 79. Plaintiff explained that he failed to produce those documents earlier in the litigation because he had sent copies of the grievances and letters to his family members for safekeeping but was only recently able to retrieve them. *Id.* at 83-85. Plaintiff did not offer any explanation as to why copies of some but not all of his grievances and letters were available from his family members. Moreover, his explanation concerning which of his family members possessed those grievances has been inconsistent. At the hearing, plaintiff testified that the copies were retrieved from his son, *id.* at 84, but plaintiff testified under oath during his deposition that his wife was in possession of any document that had not previously been produced during discovery. *Id.* at 85-86.

Plaintiff's credibility must be measured with his prior grievance history as a backdrop. Plaintiff is no stranger to the grievance process, and there is no evidence that, aside from the grievances related to the claims in groups three and four, plaintiff has experienced any difficulty in filing and pursuing grievances over the course of his incarceration. Indeed,

according to Jeffrey Hale, the Assistant Director of the DOCCS Inmate Grievance System, as of one day prior to the start of the hearing, plaintiff had appealed 445 grievances to the CORC, with an additional nine appeals then-pending. Dkt. No. 249-2 at 128-29. The sheer number of grievances that plaintiff has pursued during his incarceration leaves no doubt that he is well-versed in the grievance process.

In my view, the evidence adduced by the parties with regard to the claims in group three and four support a recommended finding that, except with respect to claims 15, 20, 23, and 32, all of the claims are unexhausted and subject to dismissal on that basis. Although plaintiff adduced purported copies of grievances and/or letters regarding his exhaustion attempts in connection with claims 9, 12, 14, 29, 30, and 33,[20] all of which are part of group three, there is no independent evidence to corroborate plaintiff's testimony in this regard. In addition, there is no record evidence at all to support plaintiff's hearing testimony that he filed grievances regarding claims 5, 7, and 24 in group four. Because I did not find plaintiff's testimony credible for the reasons already discussed above, I recommend the court dismiss claims 5, 7, 9, 12, 14, 24, 29, 30, and 33 as unexhausted.

---

[20]     *See generally* Exhs. P-A, P-B, P-D, P-F.

In addition, plaintiff did not exhaust the available administrative remedies with respect to claim 22, also falling within group three. Claim 22 asserts a claim of retaliation against defendant Fairchild arising from events at Upstate on or about July 8, 2010. Dkt. No. 45 at 23. As proof of having exhausted this claim, plaintiff offered a grievance dated September 23, 2010, No. UST-43916-10, entitled "denial of medical/harassment/retaliation." Dkt. No. 249-2 at 74; Exh. P-H-1. That grievance does in fact name defendant Fairchild, as well as defendant Atkinston. Exh. P-H-1. It is clear, however, that the grievance does not relate to the claim against defendant Fairchild arising out of events occurring on or about July 8, 2010, as alleged in paragraph 92 of plaintiff's amended complaint. *Id.* In any event, the grievance adduced as Exhibit P-H-1 would have been patently untimely under the IGP even if it did relate to the incident on or about July 8, 2010, because it was filed more than two months later. *See* 7 N.Y.C.R.R. § 701.5(a)(1) (requiring inmates to file a grievance within twenty-one days of the alleged incident forming the basis of the complaint). Plaintiff has otherwise presented no credible evidence that he submitted a grievance regarding claim 22 against defendant Fairchild. I therefore recommend that claim 22 also be dismissed as unexhausted.

That leaves claims 15, 20, 23, and 32 for the court's consideration. All of these claims relate to the same incident that allegedly occurred on May 6, 2010, and involved the use of force by defendants Prebalick, Cioffa, and Evans. Dkt. No. 45 at 5. Plaintiff also alleges that defendant Jones was present for, and failed to protect him from, the use of force. *Id.* In support of plaintiff's contention that he filed a grievance, dated May 7, 2010, regarding the excessive force and failure to protect claims asserted against defendants Prebalick, Cioffa, Evans, and Jones, plaintiff adduced, *inter alia*, a letter he addressed to Karen Bellamy, the DOCCS Director of Inmate Grievance, dated August 13, 2010, inquiring about the status of "several grievances [he had filed] in May 2010[.]" Exhs. P-E-6, P-G-6.[21] Bellamy responded to plaintiff in a letter dated September 22, 2010, pointing out that her review of prison records demonstrated that plaintiff had filed six grievances at Five Points in May 2010.[22] Exhs. P-E-7, P-G-7. By the time plaintiff sent his letter to Bellamy on August 17, 2010, he had received a response to five other grievances he had filed in May 2010.

---

[21]     The documents that comprise plaintiff's Exhibits E and G, which purport to support plaintiff's contention that he exhausted his administrative remedies in connection with claims 15, 20, 23, 32, are identical.

[22]     Relevant DOCCS records reflect that DOCCS prison officials processed only five grievances authored by plaintiff in May 2010 while at Five Points. Exh. D-3 at 3. The sixth grievance offered by defendants as having been filed by Shepherd in May was actually filed on April 22, 2010. *Id.*; *see also* Exh. D-6.

Exhs. D-7, D-8, D-9, D-10, D-11. It remains a mystery why some of the grievances filed by plaintiff at Five Points in May 2010 were processed but not the grievance allegedly relating to the incident involving defendants Prebalick, Cioffa, Evans, and Jones on May 6, 2010. One possible explanation is that plaintiff did not actually file a grievance. Another possibility is that, assuming plaintiff filed the grievance, prison officials interfered, intentionally or not, in a manner that resulted in plaintiff's grievance never being processed. Unlike plaintiff's testimony regarding other claims in groups three and four, his testimony regarding claims 15, 20, 23, and 32 is accompanied by his letter to Bellamy, which is stamped as having been received by Bellamy's office, and Bellamy's response to his letter. Exhs. P-E-6, P-E-7, P-G-6, P-G-7. Because the contents of those letters plausibly suggest that plaintiff's grievance related to the incident on May 6, 2010, involving defendants Prebalick, Cioffa, Evans, and Jones was submitted but never processed, I have credited plaintiff's testimony regarding the claims arising from that incident only. Accordingly, I recommend defendants' motion to dismiss be denied with respect to claims 15, 20, 23, and 32.

## IV.   SUMMARY AND RECOMMENDATION

Based upon the foregoing, I find that, with some exceptions, plaintiff's claims, including all of his claims that became fully exhausted only after this action was commenced, should be dismissed for failure to exhaust. Certain claims, however, including all of those asserted against the superintendent-defendants, should survive defendants' motion and proceed to trial. Accordingly, it is hereby respectfully

RECOMMENDED as follows:

(1)   The following claims should be deemed exhausted and remain pending for trial:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 3 | Artus | Medical Indifference | Clinton | 31, 104-05, 108-09 |
| 4 | Artus | Religious Interference | Clinton | 31, 104-05, 108-09 |
| 13 | Carlee | Retaliation | Five Points | 18 |
| 15 | Cioffa | Excessive Force | Five Points | 19, 20 |
| 16 | Colvin | Excessive Force | Upstate | 86, 105, 108 |
| 17 | Colvin | Religious Interference | Upstate | 86, 105, 108 |
| 18 | Colvin | Retaliation | Upstate | 86, 105, 108 |
| 19 | Cunningham | Due Process | Green Haven | 107 |
| 20 | Evans | Excessive Force | Five Points | 20 |
| 23 | Jones | Failure to Protect | Five Points | 21 |
| 26 | Lempke | Excessive Force | Upstate | 86, 105, 108 |
| 27 | Lempke | Religious Interference | Upstate | 86, 105, 108 |
| 28 | Lempke | Retaliation | Upstate | 86, 105, 108-09 |
| 32 | Prebalick | Retaliation | Five Points | 19-22 |
| 34 | Prebalick | Excessive Force | Five Points | 35 |
| 35 | Ramus | Due Process | Five Points | 107 |

(2)     The following claims proceed to trial based on parties' failure to address them in connection with defendants' exhaustion defense:

| Defendant | Cause of Action | Prison Facility |
|---|---|---|
| Amatucci | Medical Indifference | Downstate |
| Barber | Failure to Protect | Five Points |
| N. Bezio | Due Process | DOCCS Hq. |
| Cambria | Excessive Force | Unknown |
| Chesbrough | Retaliation | Upstate |
| Holmes | Retaliation | Upstate |
| Rock | Religious Interference | Upstate |
| Lashway (formerly sued as Hawthorne) | Medical Indifference | Clinton |

(3)     The following claims should be dismissed based upon plaintiff's representation that they are not being asserted in this action:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 10 | Bower | Failure to Protect | Five Points | 15 |
| 11 | Bower | Retaliation | Five Points | 15 |
| 21 | Evans | Religious Interference | Five Points | |

(4)     The following claims should be dismissed based upon the fact that complete exhaustion occurred only after this action was filed:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 6 | Belsio | Religious Interference | Upstate | 41, 42 |
| 8 | Atkinson | Retaliation | Upstate | 90, 91 |
| 25 | Lashway | Medical Indifference | Clinton | 75, 76 |
| 31 | Prebalick | Religious Interference | Five Points | 35 |
| 36 | Rowe | Failure to Protect | Upstate | 43 |
| 37 | Rozwell | Excessive Force | Upstate | 43 |
| 38 | Rozwell | Religious Interference | Upstate | 43 |

(5)     The following claims should be dismissed based upon plaintiff's failure to fully exhaust them:

31

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 5 | Belsio | Excessive Force | Upstate | 41, 42 |
| 7 | Belsio | Religious Interference | Upstate | 41, 42 |
| 9 | Bower | Excessive Force | Five Points | 15 |
| 12 | Carlee | Religious Interference | Five Points | 34 |
| 14 | Carlee | Excessive Force | Five Points | 34 |
| 22 | Fairchild | Retaliation | Upstate | 92 |
| 24 | Jones | Medical Indifference | Five Points | 87 |
| 29 | Menard | Excessive Force | Clinton | 28 |
| 30 | Menard | Religious Interference | Clinton | 28 |
| 33 | Prebalick | Excessive Force | Five Points | 16 |

(6)    The matter should be set down for trial involving the remaining claims; and it is further

ORDERED that the court's order dismissing the claims asserted against defendant Hawthorne, Dkt. No. 224, be VACATED and the claims asserted against that individual arising from the incidents described in paragraphs 6, 93, and 102 of plaintiff's amended complaint be deemed asserted against defendant Lashway and proceed to trial.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      October 28, 2016
            Syracuse, New York

_____
David E. Peebles
U.S. Magistrate Judge

2016 WL 5791558
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

ALVIN WILSON, Plaintiff–Appellant,

v.

BROOKE MCKENNA, Defendant–Appellee,
JOHN DOE, LT; CORRIGAN–R–CC, HARTFORD
SUPERIOR COURT, STATE MARSHAL LOCKUP
DEPARTMENT, JOHN AVER, JANE DOE,
HARTFORD HCC, DOCTOR, DOC MEDICAL
STAFF, JOHN DOE, HARTFORD HOSPITAL,
an emergency room doctor, JOHN WAYEN,
JANE DOES, 3, CORRIGAN–R–CC DOC
MEDICAL HEALTH CARE STAFF, JOHN
WILLIAMS, JOHN ERFE, WARDEN, JOHN
HANNEY, JOHN DOE, CORRIGAN–R–CC, DOC,
MEDICAL HEALTH CARE STAFF, SHARRON
LAPLANTE, JOHN DOE, WARDEN, HARTFORD
HCC, DOC, F. GILLIG, OMPRAKASH PILLAI,
MONICA J. FARINELLA, FORD, WARDEN,
STATE OF CONNECTICUT, Defendants.

15–3496
|
October 4, 2016

Appeal from a judgment of the United States District
Court for the District of Connecticut (Bryant, *J.*).

**Attorneys and Law Firms**

FOR PLAINTIFF−APPELLANT: Alvin Wilson, pro se,
Suffield, Connecticut.

FOR DEFENDANT−APPELLEE: Zenobia Graham
−Days, Assistant Attorney General, for George Jepsen,
Attorney General of the State of Connecticut, Hartford,
Connecticut.

PRESENT: DENNY CHIN, SUSAN L. CARNEY,
Circuit Judges, KATHERINE B. FORREST, District
Judge. [*]

**Opinion**

**\*1 UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

Plaintiff−appellant Alvin Wilson, proceeding *pro se*,
appeals from a judgment in favor of defendant−appellee
Corrections Officer Brooke McKenna in his suit under
42 U.S.C. § 1983, alleging deliberate indifference to
his medical needs. The district court granted summary
judgment to McKenna, concluding, *inter alia*, that Wilson
had failed to exhaust his administrative remedies. We
assume the parties' familiarity with the facts, procedural
history, and issues on appeal.

As an initial matter, Wilson does not address exhaustion
in his appellate brief, and therefore has abandoned any
challenge to the district court's determination that he
failed to exhaust his administrative remedies. *See LoSacco
v. City of Middletown*, 71 F.3d 88, 92−93 (2d Cir. 1995).
In any event, we conclude that the district court properly
determined as a matter of law that Wilson failed to exhaust
his administrative remedies.

We review *de novo* a district court's grant of summary
judgment. *Garcia v. Hartford Police Dep't*, 706 F.3d 120,
126 (2d Cir. 2013) (per curiam). Summary judgment must
be granted if "there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a).

Under the Prison Litigation Reform Act of 1995 (the
"PLRA"), "[n]o action shall be brought with respect
to prison conditions under [§ 1983] ... by a prisoner
confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA requires "proper exhaustion," meaning exhaustion in "compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Nevertheless, the administrative remedies must be "available." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when (1) "it operates as a simple dead end −− with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Williams v. Priatno, No. 14−4777, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016) (quoting Ross, 136 S. Ct. at 1859−60).

The Connecticut Department of Correction ("DOC") requires inmates to submit grievances in accordance with Administrative Directive 9.6 ("AD 9.6"). Defendant's Cross−Motion for Summary Judgment, Ex. A, Wilson v. McKenna, No. 12−cv−1581, (S.D.N.Y. May 5, 2015), ECF No. 29. According to that directive, the aggrieved inmate must seek informal resolution prior to filing a grievance. AD 9.6 § 6.A. If attempts to resolve the issue verbally fail, then the inmate must submit an Inmate Request Form clearly stating the problem and requesting a remedy. Id. If no response from DOC is received within fifteen business days of receipt of the Inmate Request Form or if the remedy offered through informal resolution is unsatisfactory, the inmate may file a Level 1 grievance within thirty days of the incident giving rise to the grievance. Id. § 6.A, 6.C. To do so, he must submit an Inmate Administrative Remedy Form that covers requests for relief for both "Grievance[s]" and "Health Service Review[s]." Def. Cross−Mot. Summ. J., Ex. A at 16.

**\*2** When submitting a Level 1 grievance, the inmate must attach the previously−filed Inmate Request Form to the Inmate Administrative Remedy Form or explain why it is not attached. AD 9.6 § 6.C When an inmate files a grievance that fails to comply with these procedural requirements, DOC may either (1) return the grievance without disposition, at which point inmates are permitted to correct the error and refile the grievance, id. § 6.E, or (2) reject the grievance outright without giving the inmate an opportunity to refile, id. § 6.F. DOC is to provide a written response to the Level 1 grievance within thirty business

days of receipt of the grievance. Id. § 6.I. An inmate may appeal a Level 1 disposition to Level 2 within five calendar days of his receipt of the decision. Id. § 6.K.

As the district court concluded, the record shows that Wilson failed to properly exhaust the administrative remedies available to him before filing suit in federal court. Wilson alleges he was injured and denied necessary medical care by McKenna on September 16, 2012. Wilson filed an Inmate Administrative Remedy Form on September 20, 2012. On this form, Wilson checked a box indicating that he was "filing a Grievance." Def. Cross −Mot. Summ. J., Ex. I at 1. He did not check the box for "requesting a Health Services Review," but did check boxes for Diagnosis/Treatment" and "All Other Health Care Issues" in the Health Services Review section of the form. Id. Further, Wilson requested only medical care in the narrative portion of the form −>− no mention was made of McKenna, or any other guard for that matter. The form was treated as a request for Health Services Review and denied on October 16, 2016, because, by then, Wilson had been examined by medical staff on multiple occasions.

Wilson also submitted an Inmate Request Form on October 9, 2012, in which he mentioned the alleged incident with McKenna, but complained only about his lack of medical treatment. It was not until October 17, 2012, thirty−one days after he allegedly sustained an injury, that Wilson filed an Inmate Request Form detailing his complaint against McKenna. Although he also filed an Inmate Grievance Appeal Form −− Levels 2/3 on October 17, 2012, Wilson never filed a Level 1 grievance against McKenna. [1] Hence, Wilson failed to comply with the Administrative Directive: He did not submit a timely Level 1 grievance and his "appeals" were premature. Therefore, he did not demonstrate "proper exhaustion" and the district court properly entered summary judgment in favor of McKenna. See Ross, 136 S. Ct. at 1857 ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.").

Because Wilson did not raise the issue below or on appeal, we do not consider whether the grievance process was "unavailable" to him, either because his September 20, 2012 Inmate Administrative Remedy Form was treated as a request for Health Services Review rather than a Grievance, or for any other reason. See Ross, 136 S. Ct.

at 1859−60; *Guzman v. Local 32B–32J, Serv. Emps. Int'l Union*, 151 F.3d 86, 93 (2d Cir. 1998).

We have considered Wilson's remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

**All Citations**

--- Fed.Appx. ----, 2016 WL 5791558

Footnotes

\*    The Honorable Katherine B. Forrest, of the United States District Court for the Southern District of New York, sitting by designation.

1    We note that the record below indicates that DOC never received the forms Wilson purportedly filed on October 9, 2012, and October 17, 2012, a fact that he does not dispute. Nevertheless, we assume for the purposes of this appeal that the forms were indeed submitted.

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2004 WL 439428
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

George ARCE, Plaintiff,

v.

John P. KEANE, Thomas J. Miller,
and Ronald K. Krom, Defendants.

No. 01 Civ. 2648(BSJ).
|
March 9, 2004.

**Synopsis**

**Background:** State prisoner brought civil rights action against correctional officers.

**Holdings:** On defendants' motion to dismiss, the District Court, Jones, J., held that:

[1] prisoner failed to exhaust his administrative remedies under Prison Litigation Reform Act (PLRA);

[2] letters written to prison officials were not sufficient to exhaust prisoner's administrative remedies;

[3] prisoner reasonably could not have believed that he was being instructed to not file grievance;

[4] comment from corrections officer could not be read as preventing or obstructing state prisoner from filing grievance or appealing denial of grievance; and

[5] futility was not exception to exhaustion requirement.

Motion granted.

West Headnotes (5)

[1]    **Civil Rights**
        👉 Criminal law enforcement;prisons

        State prisoner failed to exhaust his administrative remedies under Prison

Litigation Reform Act (PLRA) before bringing § 1983 claim, although he filed two formal written grievances; prisoner failed to appeal denial or lack of response to those grievances to superintendent of correctional facility, and prisoner's failure to appeal grievance could not otherwise be excused. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a); N.Y.Comp. Codes R. & Regs. title 7, § 701.8.

        14 Cases that cite this headnote

[2]    **Civil Rights**
        👉 Criminal law enforcement;prisons

        Letters written to prison officials were not sufficient to exhaust state prisoner's administrative remedies under Prison Litigation Reform Act (PLRA) before bringing § 1983 claim. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e.

        2 Cases that cite this headnote

[3]    **Civil Rights**
        👉 Criminal law enforcement;prisons

        State prisoner asserting § 1983 claim reasonably could not have believed that he was being instructed to not file grievance, and, therefore, he was not eligible for exception to exhaustion requirement under Prison Litigation Reform Act (PLRA) for not appealing his grievance to superintendent, on allegation that corrections officers commented that prisoner was already on list to be transferred to single cell and that he should "save the paper and the time," i.e., stop sending written complaints; comment was made in response to prisoner's "Housing Style Change Request Form," prisoner subsequently filed his grievance, and corrections officers did not otherwise impede or prevent his efforts to follow grievance procedure. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7, 42 U.S.C.A. § 1997e.

6 Cases that cite this headnote

**[4]  Civil Rights**

    Criminal law enforcement;prisons

Comment from corrections officer, that requests of state prisoner to be transferred to single cell "[were] not necessary and need not be addressed," could not be read as preventing or obstructing state prisoner from filing grievance or appealing denial of grievance, and consequently, when prisoner sued under § 1983 he was not eligible for exception to exhaustion requirement under Prison Litigation Reform Act (PLRA) for not appealing his grievance to superintendent, since comment was made after prisoner filed his grievance. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7, 42 U.S.C.A. § 1997e.

5 Cases that cite this headnote

**[5]  Prisons**

    Exhaustion of Other Remedies

Futility is not an exception to the exhaustion requirement under the Prison Litigation Reform Act (PLRA). Civil Rights of Institutionalized Persons Act, § 7, 42 U.S.C.A. § 1997e.

1 Cases that cite this headnote

*Opinion*

JONES, J.

**\*1** Plaintiff George Arce, an incarcerated inmate, brings this action against Defendants pursuant to 42 U.S.C. § 1983. After the appointment of counsel, Plaintiff filed an amended complaint on July 12, 2002. Defendants move to dismiss the amended complaint on the grounds that (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff's Amended Complaint fails to state a claim; and (3) they are entitled to qualified immunity. For the reasons explained below, the Court finds that Plaintiff has failed

to exhaust his administrative remedies and GRANTS Defendants' motion to dismiss. [1]

*BACKGROUND*

While incarcerated at Woodbourne Correctional Facility ("Woodbourne"), Plaintiff, who suffers from asthma, was originally housed in a single cell in Woodbourne's C–Block. (Compl.¶ 8). [2] On December 18, 1997, Plaintiff was moved out of his single cell into a dormitory, which was housed cigarette smokers. (Compl.¶ 12). After this move, Plaintiff made a series of complaints—in the form of letters or conversations—to Defendants Keane, Krom, and Miller, in which he advised them of his health condition and requested that he be housed in a non-smoking environment. (Compl.¶¶ 13–14, 18–19, 21–23, 26–28). Plaintiff suffered several asthma attacks, which he attributes to exposure to secondhand smoke in his dormitory, during this period. (Compl.¶¶ 15, 17, 35). Plaintiff's wife also attempted to contact Defendant Keane, via letter and telephone, requesting that her husband be moved to a non-smoking cell. (Compl.¶ 20).

On January 5, 1998, a medical review of Plaintiff was conducted. The doctor who evaluated Plaintiff concluded that Plaintiff should be placed in a single cube beside a window and, if placed in a cell, Plaintiff should be housed only with a non-smoker. (Compl.¶ 24). The doctor's instructions notwithstanding, Plaintiff was not given alternate housing accommodations, and his asthma attacks continued through March of 1998.

On January 13, 1998, Plaintiff spoke to Defendants Keane and Krom and asked them to transfer him to a non-smoking cell. (Compl.¶¶ 26–27). Plaintiff's requests were refused. One week later, on January 20, 1998, after complaining to Defendant Miller, Plaintiff was moved to another dormitory, which was occupied by more smokers than the previous dormitory in which he had been housed. (Compl.¶ 28, 30). Plaintiff contends that this move was made in retaliation for his complaints regarding his housing accommodations.

After his transfer to the second dormitory, Plaintiff submitted a "Housing Style Change Request Form" requesting a change of his housing location. (Compl. ¶ 32). Plaintiff received the following written response: "Your

Arce v. Keane, Not Reported in F.Supp.2d (2004)

2004 WL 439428

[sic] already on the single cell list, save the paper and time." (Compl.¶ 33).

After several additional attempts to speak to Defendants Keane and Miller about his housing accommodations, Plaintiff filed a grievance with the Inmate Grievance Relations Committee ("IRGC") on March 20, 1998 ("First Grievance"). (Compl.¶ 36). It is unclear from Plaintiff's papers whether he ever received a formal response from the IRGC. For the purposes of this motion, the Court will assume that he did not.

**\*2** Plaintiff did subsequently receive several written responses from Woodbourne indicating that his requests were denied and that Plaintiff had failed to submit a written request for a change of accommodation. (Compl.¶ 39, 41). The response Plaintiff received from Defendant Miller, dated March 24, 1998, "indicat[ed] [Miller] would not consider Arce's requests for a housing change, claiming the prison had no responsibility in the matter. [The request also stated] 'Be advised that cell mate smoking and compatibility issues are regulated by law; therefore, your request for special provisions is not necessary and need not be addressed." (Compl.¶ 42).

On April 17, 1998, Plaintiff filed a second grievance regarding his exposure to secondhand smoke and his asthma ("Second Grievance"). [3] (Compl.¶ 46). Plaintiff received no response to this grievance from the IRGC. Plaintiff was transferred out of Woodbourne on May 18, 1998 and commenced this action on March 28, 2001. (Compl.¶ 49).

### DISCUSSION

The Prison Litigation Reform Act ("PLRA") requires a plaintiff to exhaust all available administrative remedies before filing a complaint in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C.1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") The New York State Department of Correctional Services ("DOCS") has established a three-step grievance process for all prisoner complaints. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.7. First, an inmate must file a grievance with the

IRGC, which is composed of fellow inmates and various prison officials. *See id.* § 701.7(a). Second, if the inmate is dissatisfied with the IGRC decision, he must appeal to the superintendent of the facility. *See id.* § 701.7(b). Third, if the inmate does not receive a favorable decision from the superintendent, he must appeal to the DOCS Central Office Review Committee ("CORC"). *See id.* § 701.7(c). After the inmate completes his appeal to the CORC, the grievance process is then complete and the inmate, if still dissatisfied, may bring a complaint in the appropriate court. *See Hemphill v. New York,* 198 F.Supp.2d 546, 548 (S.D.N.Y.2002). "A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." *Id.*

**[1]** There is no dispute that the PLRA's exhaustion requirement "applies to all inmate suits about prison life." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Here, Plaintiff failed to exhaust his administrative remedies because, although he filed two formal written grievances, he failed to appeal the denial or lack of response to those grievances to the superintendent of the facility. An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance.

> **\*3** Among other reasons, Congress enacted § 1997e(a) to give prison officials an opportunity to take corrective actions that might obviate the need for litigation and to assure that adjudication by federal courts would be facilitated by an administrative record that clarifies the contours of a controversy. *See Porter,* 534 U.S. at 524–25; *Booth v. Churner,* 532 U.S. 731, 737, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Allowing an inmate to opt out of New York's grievance scheme without filing even one appeal and before receiving any response from prison authorities would undermine these goals. *New York's legislature, recognizing that some grievances will not be answered within seven days, gave prisoners the right to bring their grievances to the attention of the Superintendent even in the absence of an adverse response from the IGRC.*

*See* N.Y. Comp.Codes R. & Regs., tit. 7, § 701.8. *It is unreasonable to read these regulations as providing that a federal action is the next and only recourse when the prison fails to respond to an initial grievance.*

*Petty v. Goord,* 2002 U.S. Dist. LEXIS 21197, at *13–14 (S.D.N.Y. Nov. 4, 2002) (emphases added); *see also McNair v. Jones,* 2002 U.S. Dist. LEXIS 17409, at *30 n. 5 (S.D.N.Y. Sept. 18, 2002); *Sims v. Blot,* 2003 U.S. Dist. LEXIS 12729 (S.D.N.Y. July 30, 2003). *But see John v. N.Y.C. Dep't of Corrs.,* 183 F.Supp.2d 619, 625 (S.D.N.Y.2002) (finding that the plaintiff exhausted administrative remedies under N.Y. Comp.Codes R. & Regs., tit. 7, § 701 where he filed a grievance and received no response because "there was no [adverse] decision to appeal").

**[2]**  Nonetheless, Plaintiff maintains that his claims should not be dismissed because they fall within a narrow exception that allows an incarcerated plaintiff to maintain an action "even when the requirements of all administrative remedies have not technically been exhausted." (Pl. Mem. at 10).

Two exceptions to the PLRA's exhaustion requirement were articulated in *O'Connor v. Featherstone,* 2002 WL 818085 (S.D.N.Y. April 29, 2002), two months after the Supreme Court reiterated the exhaustion requirement in *Porter v. Nussle. O'Connor* held that an inmate may defeat a motion to dismiss even when administrative remedies have not technically been exhausted if (1) the inmate was led to believe by prison officials that his alleged incident was not a "grievance matter" and assured that his claims were otherwise investigated; or (2) the inmate makes a "reasonable attempt" to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts. *O'Connor,* 2002 WL 818085, at *2. Even assuming that these are valid exceptions to the exhaustion requirement, Plaintiff's arguments are unavailing.

Here, Plaintiff does not allege that corrections officers impeded or prevented his efforts to follow the grievance procedure. Rather he argues that his two formal grievances and numerous letters evidence "substantial and repeated efforts to obtain a remedy under DOCS' procedures," and because Defendants instructed Plaintiff

to "save the paper and time" and told him that his requests "[are] not necessary and need not be addressed," the remedies contemplated by the PLRA "were not 'available' under the meaning of the PLRA." (Pl. Mem. at 13–14).

**\*4**  The Court reads Plaintiff's argument as two-fold: First, that Plaintiff's efforts—including his informal letters, oral conversations, and two formal grievances—constitute a "reasonable attempt" to exhaust his administrative remedies; and second, that Defendants' comments that Plaintiff should "save the paper and time" and that Plaintiff's requests "[are] not necessary and need not be addressed" led Plaintiff to believe that his alleged incident was not a "grievance matter" and/or that his complaints were being investigated. Neither argument is convincing.

**[3]**  It is well established that writing letters to prison officials is insufficient to exhaust administrative remedies. *E.g., Mills v. Garvin,* 2001 WL 286784 at *3 (S.D.N.Y. Mar.2, 2001) ("letter writing is not the equivalent of an exhaustion of administrative remedies under the PLRA"). Therefore, Plaintiff's letters and conversations with Defendants are not relevant in determining whether he exhausted his administrative remedies. Moreover, Plaintiff could not have reasonably believed that Defendants' statements indicated that he need not follow the three-step grievance procedure. The comment that Plaintiff was already on the list to be transferred to a single cell and that he should "save the paper and the time"—*i.e.,* stop sending written complaints—was made in response to Plaintiff's "Housing Style Change Request Form" and, therefore, Plaintiff could not reasonably believe that he was being instructed not to file a grievance. Furthermore, this comment was made *before* Plaintiff filed his First Grievance. Plaintiff could not have reasonably believed that a comment made before he filed his First Grievance justified his failure to appeal that grievance when he received no response.

**[4]**  The second comment, that Plaintiff's requests "[are] not necessary and need not be addressed," was made after Plaintiff filed his First Grievance. However, in his Memorandum of Law, Plaintiff described this comment as being made in a document that "indicat[ed] [Miller] would not consider Arce's requests for a housing change, claiming the prison had no responsibility in the matter." (Pl. Mem. at 7). Such a comment cannot be read as preventing or obstructing Plaintiff from filing

a grievance or appealing the denial of a grievance. *Cf. Thomas v. N.Y. State Dep't of Corr. Servs.,* 2003 U.S. Dist. LEXIS 20286, at *13 (S.D.N.Y. Nov. 10, 2003) (dismissing plaintiff's claims for failure to exhaust even though two prison officials told plaintiff he need not file a grievance; "while [plaintiff] was told that it was not necessary for him to file a grievance, there is no evidence that he was told that he could not file a grievance. Thus, the instructions are properly understood as bad advice, not prevention or obstruction ."). Indeed, Plaintiff does not appear to have relied upon Miller's comment, as he filed a second grievance with the IGRC *after* receiving Miller's March 24, 1998 response. In any event, the Court finds that the types of representations made in this case by prison officials outside of the grievance process do not warrant an exception to the exhaustion requirement. Such an exception is at odds with the Congressional goals of reducing the quantity and improving the quality of prisoner suits by affording corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. *Porter,* 534 U.S. at 524–525.

**\*5** **[5]** Finally, Plaintiff argues that an appeal to Defendant Keane was not an "available" administrative remedy, as contemplated by the PLRA, because Keane had refused his previous informal requests and because, in a letter to Plaintiff's counsel dated March 23, 1998, Defendant Keane had denied ever receiving a written request from Arce to be transferred to a non-smoking cell. [4] (Def. Mem. at 13). Plaintiff's argument is unclear, but presumably he is arguing that, in light of Defendant Keane's previous refusals and allegedly false statement that he had not received any written requests from

Plaintiff to change his housing accommodations, an appeal to Defendant Keane would have been futile. However, futility will not excuse an inmate's failure to exhaust his administrative remedies. *Cf. Porter,* 534 U.S. at 524 ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."). In any event, even assuming that Defendant Keane would have denied Plaintiff's appeal, Plaintiff still could have obtained relief from the CORC, which would have "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525.

## *CONCLUSION*

Because Plaintiff failed to exhaust his administrative remedies before filing this action, the Court GRANTS Defendants' motion and dismisses Plaintiff's claims without prejudice. *See Morales v. Mackalm,* 278 F.3d 126, 128, 131 (2d Cir.2002) (per curiam) ("clarif[ying] that if a district court dismisses a prisoner's complaint for failure to exhaust administrative remedies, it should do so without prejudice").

The Clerk of the Court is directed to close this case.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 439428

---

Footnotes

1   The Court does not reach the other grounds offered by Defendants in support of their motion to dismiss.

2   References to Plaintiff's First Amended Complaint are cited (Compl.¶ __).

3   Defendants dispute the authenticity of these grievances because neither bears an inmate grievance number or the signature of the grievance clerk. (Def. Mem. at 4–5). As this is a motion to dismiss, the Court assumes the truthfulness of Plaintiff's allegations—including his allegations regarding his filing of these two grievances.

4   As superintendent of Woodbourne, an appeal to Defendant Keane would have been the second step in the grievance process.

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Smith v. Burge, N.D.N.Y., September 28, 2006

2005 WL 928620
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Ronald DAVIDSON, Plaintiff

v.

John TALBOT, Auburn Corr. Fac.; Richard Smith,
Auburn Corr. Fac.; M.D. Anthony Graceffo, Fac.
Health Servs. Dir.; Hans Walker; Gary Hodges,
Deputy Supt., Auburn Corr. Fac.; Glen Goord,
Comm'r of Docs; M.D. Lester Wright, Chief Medical
Officer of Docs; United Health Care; Estate of
Edward Dann; Jerry S. Leonard, Chief Medical
Officer of Docs; John Does 1-10, Defendants.

No. Civ.9:01 CV 0473.
|
March 31, 2005.

**Attorneys and Law Firms**

Ronald Davidson, 76-A-1166, Shawangunk Correctional
Facility, Wallkill, New York, Plaintiff pro se.

Hon. Eliot Spitzer, Attorney General of the State of
New York, Office of Attorney General-Albany Office,
The Capitol, Albany, New York, for Defendants Talbot,
Smith, Graceffo, Goord, and Estate of Dann, of counsel.

Charles J. Quackenbush, Assistant Attorney General, of
counsel.

REPORT-RECOMMENDATION AND ORDER

TREECE, Magistrate J.

**\*1** Plaintiff Ronald Davidson brings this *pro se* action,
pursuant to 42 U.S.C. § 1983, alleging Defendants violated
his civil rights. Specifically, Davidson alleges that on
or about April 6, 1998, while incarcerated at Auburn
Correctional Facility, he was assaulted by Defendants
Talbot and Smith "as payback" for filing complaints
and court cases against their co-workers at Auburn. Dkt.
No. 36, 2d Am. Compl. at ¶¶ 1-4. Plaintiff also claims
that Defendants Walker, Hodges, [1] and Dann authorized

the use of force on Plaintiff and that he suffered back
and shoulder injuries as a result of the attack. *Id.* at ¶¶
5-6. Plaintiff claims that he was denied proper medical
care by Defendants Leonard and United Health Care in
deliberate indifference to his serious medical needs. *Id.*
Finally, Davidson alleges that he informed Defendants
Goord and Graceffo of the denial of medical care and they
failed to intervene on his behalf. *Id.*

Presently before this Court is a Motion for Summary
Judgment brought by Defendants Talbot, Smith,
Graceffo, Goord, and Estate of Dann, pursuant to FED.
R. CIV. P. 56(b). Dkt. No. 46. Plaintiff opposes the
Motion. Dkt. Nos. 56-57. [2] For the reasons that follow, it
is recommended that Defendants' Motion be granted and
Plaintiff's Second Amended Complaint be dismissed in its
entirety.

I. BACKGROUND

A. Procedural History

Because not all Defendants have been served with process,
a recitation of the procedural history, which is somewhat
convoluted, is warranted. Plaintiff timely commenced this
action on or about April 3, 2001, by filing his verified
Complaint with the Clerk of the Court. Dkt. No. 1,
Compl. [3] Plaintiff simultaneously filed an Application to
Proceed *In Forma Pauperis.* Dkt. No. 2.

On May 4, 2001, the Honorable Frederick J. Scullin,
Chief United States District Judge, granted permission
for Davidson to proceed *in forma pauperis* and ordered
Davidson to file an amended complaint that complied
with Rules 8 and 10 of the Federal Rules of Civil
Procedure. Dkt. No. 4. In accordance with such directive,
Davidson filed an Amended Complaint (Dkt. No. 6),
which was thereafter approved for service on the named
Defendants (Dkt. No. 7). Plaintiff was warned, however,
that the U.S. Marshals Service could not effect service
on "the Estate of Edward Dann" as a Defendant unless
Plaintiff first ascertains the identity of an individual
authorized to accept service of process on behalf of the
Estate. Dkt. No. 7 at p. 2. Thereafter, according to
the Docket Report, on August 21, 2001, Summonses
were issued for John Talbot, Richard Smith, Anthony
Graceffo, Hans Walker, Gary Hodges, Glen Goord,

Lester Wright, United Health Care, Jerry S. Leonard, and Edward Dann.

On September 17, 2001, the Court received a letter, dated July 2, 2001, from William M. Gonzalez, Esq., Deputy Counsel for the New York State Department of Correctional Services (DOCS), informing the Court that Edward Dann was deceased. Dkt. No. 8. That same date, the Summonses issued for Defendants Dann and Leonard were returned to the Court unexecuted. Dkt. Nos. 9 & 10. On February 1, 2002, Davidson filed a Motion for Injunctive Relief seeking an Order from the Court directing (1) the U.S. Marshals Service "to use their resources" to locate Defendant Leonard and serve him with process; (2) Defendants to disclose the full name and address of the Executor of the Estate of Edward Dann; (3) Defendants to disclose the file number and county of the surrogate court where Dann's Estate is probated; and (4) Anthony Annucci, Esq., DOCS counsel, to accept service of process on behalf of Edward Dann and/or Estate of Edward Dann. Dkt. No. 14. Plaintiff identified Defendant Leonard as the President and Chief Executive Officer of United Health Care Group, Inc., (United) and further alleged that United provided inmate medical services under a contract with NYSDOCS. With regard to service on Leonard, Davidson provided an address for United in Anaheim, California, however, service attempted at that address was returned with the notation "not at this address." Dkt. No. 10.

**\*2** In light of alleged contractual relationship between United and DOCS, court staff wrote to Mr. Gonzalez, Deputy Counsel for DOCS, requesting assistance in determining whether DOCS had an address on file for Defendant Leonard. Dkt. No. 16. Thereafter, on April 25, 2002, this Court granted in part and denied in part Plaintiff's request for injunctive relief. Dkt. No. 17. Specifically, with respect to Defendant Leonard, we directed no action be taken until DOCS responded to the Court's letter. *Id.* at p. 3. With regard to Defendant Dann, we noted that Defendant Dann deceased prior to the initiation of this suit and that Plaintiff's difficulty in effecting service was due to his inability to properly identify this Defendant. *Id.* at p. 4. We nevertheless directed DOCS to inform the Court "whether it has been appointed agent for service of process by the successors or representatives of Edward Dann and, if not, to provide the Court with any information it may have regarding the identity and location of Dann's successors

or representatives." *Id.* at p. 4. In light of the fact that none of the other Defendants appeared to have been served, we further directed the Marshals Service to advise the Court in writing its efforts to effect timely service on the remaining Defendants. *Id.* at p. 5.

On May 2, 2002, the Court received a letter from Mr. Gonzalez advising that he has an address for Jerry Leonard and the Estate of Dann has designated DOCS Counsel's Office as its agent for service of process. Dkt. No. 18. On May 16, 2002, the Court received a letter from Barbara Wright, Administrative Officer, United States Marshal Service, advising that her office had never received Summonses, copies of the Complaint, nor USM-285 forms [4] for any Defendant other than Leonard and Dann. Dkt. No. 19. Accordingly, on May 30, 2002, this Court directed that Summonses be reissued for each Defendant and forwarded to the Marshals Service, along with copies of the Amended Complaint, for service on the Defendants. Dkt. No. 20 at p. 2. We also provided specific addresses for service on Defendants Dann and Leonard and further directed Plaintiff to complete the necessary USM-285 forms for each Defendant. *Id.* at pp. 2-3. Summonses were accordingly reissued by the Clerk of the Court and were returned executed for the following Defendants: John Talbot, Richard Smith, Glen Goord, and Anthony Graceffo. Dkt. Nos. 21-24. The Summonses for Defendants Walker and Hodges were returned unexecuted with a note to Plaintiff from the Marshals Service indicating that Plaintiff must notify the Service in writing if he wanted the Service to make further service attempts. Dkt. Nos. 26-27.

On August 21, 2002, Defendants Talbot, Smith, Graceffo, and Goord, made a Motion for a More Definitive Statement and a Motion to Strike Part of the Amended Complaint, pursuant to Rules 12(e) and 12(f) of the Federal Rules of Civil Procedure (Dkt.Nos.29-30); Plaintiff opposed the Motion (Dkt. No. 31). By their Motion, Defendants sought a more definitive description of the actions Davidson took with regard to exhaustion of administrative remedies. In ruling on Defendants' Motion, we found that Plaintiff's pleading was adequate to survive Defendants' Motion, but nevertheless directed Plaintiff to file an amended complaint that alleges in detail the steps he took to exhaust his administrative remedies with respect to all claims. [5] Dkt. No. 32.

**\*3** On May 13, 2003, Plaintiff filed his Second Amended Complaint in compliance with our directive. Dkt. No. 35. Defendants urged the Court not to accept the Second Amended Complaint as it still suffered from the same deficiency with regard to exhaustion. Dkt. No. 37. On June 17, 2003, we reviewed the contents of the Second Amended Complaint as well as Defendants' Objections and determined that the pleading sufficiently complied with our directives and ordered Defendants to file an answer to the Second Amended Complaint. Dkt. No. 38. In that same Order, we revisited the issue of service on Defendants Dann and Leonard in light of the fact that the Summonses had still not been returned. We again directed the Marshals Service to review its files and advise the Court, in writing, of the status such service. *Id.* On July 3, 2003, Defendants Talbot, Smith, Graceffo, and Goord filed an Answer to the Second Amended Complaint. Dkt. No. 39. On July 7, 2003, the Court received a letter from the Marshals Service indicating that on June 6, 2002, Summonses were received for Defendants Goord, Hodges, Walker, Graceffo, Smith, and Talbot, but not for Dann and Leonard, nor had the Service received USM-285 forms from Plaintiff for Defendants Dann and Leonard. Dkt. No. 40. On March 22, 2004, Summonses were reissued by the Clerk of the Court for Defendants Dann and Leonard. Then, on April 19, 2004, Plaintiff was informed by the Marshals Service that he failed to provide USM-285 forms for "all defendants to be served." Dkt. No. 45. On May 28, 2004, the Summonses for Defendants Dann and Leonard were returned unexecuted. Dkt. Nos. 47-48. Notably, in filling out the USM-285 forms, Plaintiff indicated the same address for Defendants Dann and Leonard, that is, DOCS General Counsel, 1220 Washington Avenue, Albany, New York. *Id.* The Court was later advised by Deputy Counsel Gonzalez that the refusal to accept service on behalf of the Estate of Dann was in error. Dkt. No. 51. As to Defendant Leonard, Mr. Gonzalez reiterated that DOCS has not been designated as an agent to accept process, and thus, the refusal to accept such service on behalf of Mr. Leonard was proper. *Id.* Once again, a Summons was issued for Defendant Dann; such Summons was returned executed on August 16, 2004. Dkt. No. 54.

On September 9, 2003, a Pre-Trial Scheduling Order was issued in this case setting the following deadlines: Discovery Deadline-January 30, 2004; Motion to Compel Filing Deadline-February 28, 2004; Motion Filing Deadline-May 30, 2004. Dkt. No. 42. On June 1, 2004,

Defendants Goord, Graceffo, Smith, and Talbot filed an untimely Motion for Summary Judgment, which was opposed by Plaintiff and is now under review. After service had finally been effectuated on Defendant Estate of Dann, Defendants requested that the Motion for Summary Judgment be considered submitted on behalf of Mr. Dann's estate as well. Dkt. No. 52. To date, service has not been properly effectuated on Defendants Walker, Hodges, Wright, Leonard, or United Health Care.

### B. Facts

**\*4** The following material facts are uncontroverted. [6] Plaintiff is a New York State prison inmate. In April 1998, Davidson was housed at the Auburn Correctional Facility, in Auburn, New York, a maximum security prison. Dkt. No. 46, Charles J. Quackenbush, AAG, Decl. at ¶ 2, Ex. A (copy of DOCS Inmate Locator System Printout for Davidson); N.Y. COMP.CODES R. & REGS. tit. 7, § 100.10. According to facility log entries, on April 6, 1998, at approximately 11:45 a.m., Davidson and other inmates were taken from the Auburn Special Housing Unit (SHU) to the Walsh Regional Medical Unit and were returned to Auburn at 4:45 p.m. Dkt. No. 46, Defs.' 7.1 Statement at ¶ 2; E. Scott Talbot Decl., Ex. A-1 (SHU log entries).

Upon Davidson's return to the facility, he was escorted by correction officer (C.O.) Talbot, C.O. Hai, and Sergeant (Sgt.) Valentino from SHU to the E-Block, a general population section of the prison. Defs.' 7.1 Statement at ¶ 3; Talbot Decl., at ¶ 10, Exs. A-1 & A-2. Pursuant to standard procedure, Plaintiff's hands were cuffed behind his back during the escort. *Id.* At approximately 5:02 p.m., Davidson began complaining of chest pains and requested an emergency sick call, however, such request was denied when a nurse advised E-Block security staff that Plaintiff had just returned from a hospital trip rendering an emergency sick call unnecessary. [7] Defs.' 7.1 Statement at ¶ 7; Talbot Decl., Ex. A-2; Anthony J. Graceffo, M.D., Decl., Ex. A (Davidson's Ambulatory Health Record (AHR)). At approximately 5:41 p.m., Defendants Talbot and Smith escorted Plaintiff from the E-Block to the infirmary where he was examined by a facility nurse who addressed his complaints of tightness in his chest. Defs.' 7.1 Statement at ¶ 9; Talbot Decl. at ¶¶ 15-16; Richard Smith Decl. at ¶¶ 15-16; AHR, entry dated Apr. 6, 1998 at 1745 hours). His blood pressure was measured and an

electrocardiogram (EKG) was performed; Davidson had no discernible cardiac problem and made no complaints about physical abuse. *Id.* At the conclusion of the medical examination, Talbot and Smith re-cuffed Davidson and escorted him back to E-Block. Defs.' Decl. at ¶ 13; Talbot Decl. at ¶ 16; Smith Decl. at ¶ 16. After receiving his evening kosher meal and medications, Smith and Talbot returned Davidson to his E-Block cell. *Id.*

Later that day, at approximately 11:50 p.m., Davidson again requested an emergency sick call. According to the AHR, C.O. Woodward [8] notified Richard Sharples, [9] the nurse on duty at the infirmary, that Davidson was again complaining of cardiac pain. Defs.' 7.1 Statement at ¶ 17; Graceffo Decl. at ¶ 15, AHR, entry dated Apr. 6, 1998, 2345 hours; Richard Sharples Decl. at ¶ 5. Woodward also advised the nurse that Davidson had been smoking cigarettes in his cell. *Id.* The nurse stated that Davidson had been seen during the previous shift and his problems had been addressed, he should stop smoking, and could put in for a sick call in the morning. *Id.* On April 7, 1998, shortly after midnight, Davidson was informed that his request for sick call was denied. In response, Davidson insisted upon his chest pain complaint and stated that he had been in an altercation with correctional officers sometime during April 6 and injured his shoulder. Defs.' 7.1 Statement at ¶ 18; Talbot Decl., Ex. A-2 (log report); Sharples Decl. at ¶ 6. At approximately 12:30 a.m., Nurse Sharples, accompanied by a sergeant and a correctional officer, responded to Davidson's cell. Defs.' 7.1 Statement at ¶ 19; Sharples Decl. at ¶ 7. According to the log report, at some point during the examination, Davidson broke the blood pressure cuff, which he kept in his possession and refused to give back; hours later, Davidson returned the cuff. Talbot Decl., Ex. A-2 (log entry).

## II. DISCUSSION

### A. Summary Judgment Standard

**\*5** Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no

genuine issue of material fact. *F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) and *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), *accord, Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. See *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

We note that Davidson is proceeding herein *pro se* and thus, would normally be afforded special solicitude in construing his claims. However, the Second Circuit has stated that there are circumstances where an overly litigious inmate, "who is quite familiar with the legal

system and with pleading requirements," may not be afforded such special solicitude. *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (declining Ronald Davidson, the Plaintiff herein, who was categorized as an "extremely litigious inmate," the benefit of lenient treatment normally afforded *pro se* litigants and thus denying him the opportunity to amend a claim where he failed to properly plead a cause of action); *see also Davidson v. Dean,* 204 F.R.D. 251, 257 (S.D.N.Y.2001) (citing Second Circuit opinion in *Davidson v. Flynn* and refusing to accord deference Ronald Davidson, who is also the same Plaintiff herein); *Santiago v. C.O. Campisi Shield No. 4592,* 91 F.Supp.2d 665, 670 (S.D.N.Y.2000) (applying *Davidson* to *pro se* plaintiff who had ten suits pending in district); *Brown v. McClellan,* 1996 WL 328209, at *1 n. 3 (W.D.N.Y. Jun.11, 1996) (stating that plaintiff's "litigious nature," notwithstanding his *pro se* status, "weighs somewhat against the leniency that is normally accorded"); *Brown v. Selsky,* 1995 WL 13263, at *8 n. 1 (W.D.N.Y. Jan.10, 1995) (denying special solicitude to *pro se* plaintiff who had seven cases pending in the district). As the Second Circuit has noted, Ronald Davidson, the Plaintiff herein is no stranger to the courts and at one point had "at least 30 simultaneously pending suits." *Davidson v. Flynn,* 32 F.3d at 31 (citing *Davidson v. Smith,* 9 F.3d 4, 6 (2d Cir.1993)). Thus, in light of Davidson's experience in federal court, we find that the special solicitude afforded *pro se* litigants shall not be accorded herein.[10]

### B. Service of Process and Pleading Matters

**\*6** Under FED. R. CIV. P. 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[11] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.*

In this case, where Davidson has been authorized by the Court to proceed *in forma pauperis,* pursuant to 28 U.S.C. § 1915, the U.S. Marshals Service was appointed to effect service of process of the Summons and Complaint on his behalf. *See* 28 U.S.C. § 1915(d); FED. R. CIV. P. 4(c)(2); N.D.N.Y.L.R. 5.1(h). In accordance with the Local Rules of Practice for the Northern District of New York,

[i]n the case of a prisoner's civil rights action, or any action where a party has been granted leave to proceed in forma pauperis, the Marshal shall serve the summons and complaint by regular mail pursuant to Fed.R.Civ.P. 4(c)(2). The Marshal shall file the return or other acknowledgment of service with the Court. The return shall constitute *prima facie* evidence of the service of process. If no acknowledgment of service is filed with the Court, the Marshal shall notify the plaintiff and, if requested by the plaintiff, shall make personal service as provided in Fed.R.Civ.P. 4.

N.D.N.Y.L.R. 5.1(h) (emphasis added).

To date, service has not been properly effectuated on Defendants Walker, Hodges, Wright, Leonard, or United Health Care. First, with regard to Defendant Hans Walker, Former Superintendent, Auburn Correctional Facility, and Defendant Gary Hodges, Former First Deputy Superintendent, Auburn Correctional Facility, both Summonses were returned unexecuted on August 5, 2002. Dkt. Nos. 26 & 27. "[I]n situations where a plaintiff is proceeding in forma pauperis and has been forced to rely on the U.S. Marshals for execution of service, the Plaintiff should not be penalized for the failings of the Marshals." *Webber v. Hammack,* 973 F.Supp. 116, 121 (N.D.N.Y.1997) (citing *Romandette v. Weetabix Co.,* 807 F.2d 309, 310 (2d Cir.1986)). However, in reviewing the case file, we note that accompanying the returned unexecuted Summonses for Defendants Walker and Hodges were notes from the U.S. Marshal, notifying Plaintiff that if he desired further attempts of service for these two Defendants, he must notify the Marshals Service *in writing. Id.* There is no indication in the record that Plaintiff made any attempts to effectuate service on these Defendants. As outlined above, Plaintiff's pleas for court intervention regarding service matters have primarily centered around Defendants Leonard and the Estate of Dann, the latter of which was eventually properly served. Plaintiff has failed to provide any explanation for his failure to pursue service on Defendants Walker and Hodges, despite the fact that Defendants raised this

very issue in their Memorandum of Law in support of their Motion and indicated to the Court that the unserved Defendants should be dismissed. Thus, the Court has not obtained the requisite jurisdiction over these Defendants.

**\*7** Usually, when we recommend dismissal of a Defendant due to the Plaintiff's failure to effectuate service, the dismissal is without prejudice. FED. R. CIV. P. 4(m). However, in reviewing the Second Amended Complaint, which replaces all prior pleadings *in toto*, the Court notes that there is no mention of any personal involvement by Defendant Hodges in any of the alleged constitutional violations. [12] And, as to Defendant Walker, the sole allegation is that he "approved" the use of force. Dkt. No. 36, 2d Am. Compl. at ¶ 5. Plaintiff fails to elaborate, either in his Second Amended Complaint or in his Opposition to Defendants' Motion, in what way Defendant Walker approved or sanctioned the alleged use of force, and more importantly, if pursuing an Eighth Amendment violation, why Walker approved the use of force. Under the authority provided by 28 U.S.C. § 1915(e)(2)(B)(ii), "the court shall dismiss the case at any time if the court determines that ... the action ... fails to state a claim on which relief may be granted." It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims. Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973). Since Davidson has failed to adequately allege the personal involvement of Defendants Walker and Hodges in any constitutional violation, we recommend dismissal of these Defendants from this lawsuit, with prejudice.

Similarly, with regard to Defendant Lester Wright, Chief Medical Officer at DOCS, service has not been properly effectuated and it is unclear from the record what attempts, if any, were made by the Marshals Service. However, a review of the Second Amended Complaint reveals that the sole allegation against Defendant Wright is that he failed to intervene on Plaintiff's behalf after Plaintiff wrote a letter to Mr. Wright. Plaintiff does not provide a copy of that letter, nor does he indicate the substance of the letter or when such letter was written. The fact that Plaintiff may have written a letter does not automatically render the supervisory official responsible

for any constitutional violation. *See Thomas v. Coombe, 1998 WL 391143, at \*6 (S.D.N.Y. July 13, 1998)* (ignoring letter is insufficient for personal involvement); *Young v. Kihl, 720 F.Supp. 22, 23 (W.D.N.Y. Sep.22, 1989)* (the wrong must have been capable of mitigation at the time the supervisory official was apprised thereof); *Woods v. Goord, 1998 WL 740782 (S.D.N.Y. Oct.23, 1998)* (receiving letters or complaints does not automatically make a supervisor liable for the denial of medical care). Prison supervisors cannot be deemed personally involved based simply on a response to a complaint. *See Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir.1997).* Thus, Plaintiff has also failed to state a cause of action against Defendant Wright, who, accordingly, should be dismissed from this action, with prejudice in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii).

**\*8** The final two Defendants who have not been served in this action are (1) Defendant Jerry S. Leonard, who Davidson identifies in his First Amended Complaint as the President and Chief Executive Officer of United Health Care Group, Inc., and (2) United Health Care Group, Inc. There can be no denying, unlike the other non-served Defendants, that Davidson has been particularly diligent in his efforts to have Defendant Leonard served. *See supra* Part I.A, Procedural History. However, in reviewing the Second Amended Complaint, we note that Davidson omitted Defendant Leonard from both the caption and parties sections of his pleading and the sole allegation against Defendant United Health Care Group is that it, as the contracted managed care provider for DOCS, denied Davidson the magnetic resonance imaging (MRI) ordered by one of the facility doctors. While, due to the lack of service, the Court has not gained jurisdiction of these Defendants, and putting aside for the moment any concerns the Court has with regard to whether a § 1983 action can be stated against the managed health care provider, we note that Davidson's pleading fails to adequately allege a cause of action against these two Defendants in that he has not met the pleading requirements of an Eighth Amendment violation, specifically, he has failed to allege an objectively serious medical condition as well as a deliberately indifferent state of mind by these Defendants in denying the MRI. *See infra* Part II.C.3 n. 19 (discussing Eighth Amendment Standard). Since Davidson has failed to allege a sufficiently serious medical condition and a deliberately indifferent state of mind, he has failed to state a cause of action against these Defendants. As such, we

recommend dismissal of these Defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with prejudice.

## C. Claims Against the Remaining Defendants

The remaining Defendants, who have moved for dismissal of this action, are Defendants (1) John Talbot, Correction Officer (CO) at Auburn, (2) Richard Smith, CO at Auburn, (3) Anthony Graceffo, M.D., Facility Health Services Director at Auburn, (4) Glen Goord, Commissioner of DOCS, and (5) Estate of Edward Dann, decedent former Superintendent of Auburn.

### 1. Exhaustion of Administrative Remedies

Prior to assessing the merits of Plaintiff's claims, we must address Defendants' affirmative defense that Davidson has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that for actions brought by prisoners under 42 U.S.C. § 1983, the inmate must first exhaust his or her administrative remedies. The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Exhaustion is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner,* 531 U.S. 731, 741 n. 6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.") (cited in *Marvin v. Goord,* 255 F.3d 40, 43 (2d Cir.2001)).

**\*9** Here are the following uncontroverted, material facts regarding Davidson's exhaustion of the claims stated in his Second Amended Complaint, that being, Talbot and Smith's use of excessive force in retaliation for Plaintiff's use of the grievance system and the general denial of access to medical care, primarily a MRI and orthopedic consult, for injuries sustained as a result of the assault. As a general matter, the Court is informed that, in accordance with DOCS Directive 4040, documentary grievance records are maintained for a period of four years, after which they are destroyed. Cheryl Parmiter Decl. at ¶ 6; Thomas G. Eagen Decl. at ¶ 3, Ex. A (DOCS Directive 4040, Part VI(J), File Maintenance/Confidentiality ("In order to

ensure preservation, it is Department policy to maintain greivance files for the current year plus the previous four calendar years."). As standard practice at Auburn, contemporaneous electronic records of grievances are often held beyond the standard record retention period. Parmiter Decl. at ¶ 6. Those computer files do not contain complete copies of grievance materials but record key details, including, the grievance number, name/DIN/ housing unit of the filing inmate, a short title summarizing the primary complaint presented in the grievance, the date the grievance was received, and the level of appeal the grievance was pursued. *Id.* While many of Davidson's documentary grievances were destroyed in accordance with Directive 4040, a computerized record of grievances filed between January 2, 1997 to May 21, 1998 was provided; such record indicates that Davidson filed 182 grievances during that period. *Id.* at ¶ 8, Ex. A. During the seven weeks between April 6, 1998, the alleged incident date, and May 26, 1998, the date Plaintiff was transferred to Wende Correctional Facility, Davidson filed eight grievances. *Id.* While the facility no longer retains copies of these eight grievances, the Attorney General's Office located in its own archives a copy of a grievance submitted by Davidson which references the alleged assault of April 6[th]. The Court shall summarize the substance of such grievance.

On April 30, 1998, Davidson filed Grievance # AUB-29990-98, with the Auburn Inmate Grievance Review Committee (IGRC). Defs.' 7.1 Statement at ¶ 30; Parmiter Decl. at ¶ 9. In this grievance, Davidson complains of lack of access to medical care for examination of injuries sustained when he was assaulted on April 6th by unnamed guards. *Id.* The Grievance did not identify the individuals who participated in the assault nor did it describe a time or location of the use of force, nor was any action requested to be taken against the alleged aggressors; the only action requested was to see a facility doctor. Defs.' 7.1 Statement at ¶ 33; Parmiter Decl. at ¶ 12, Ex. B (Grievance). The Grievance did not allege that staff assaulted Davidson in retaliation for his use of the grievance processs. Parmiter Decl. at ¶ 14. The Grievance did not present any allegation that Davidson requested or was being denied a MRI scan on his shoulder(s) for injuries inflicted on April 6th, nor were there any allegations that Davidson requested or was being denied a consultation with or treatment by an orthopedic surgeon in connection with injuries sustained on April 6th.

Parmiter Decl. at ¶¶ 15-16. Further, to the extent the Grievance referenced an incident alleged to have occurred on April 6th, the Grievance was not timely filed. Defs.' 7.1 Statement at ¶ 32; Parmiter Decl. at ¶ 11; Eagen Decl., Ex. A (DOCS Directive 4040, Part V, Procedures-Grievance to be submitted within fourteen (14) calendar days of an alleged occurrence). Nevertheless, the Grievance was accepted and investigated. Defs.' 7.1 Statement at ¶ 32; Parmiter Decl. at ¶ 11. Correctional Sergeant Burton was assigned to investigate the Grievance, and with the assistance of Nurse Coyne, Sgt. Burton examined Davidson's medical record; the medical record revealed no indication that Davidson experienced any traumatic event on April 6th. Defs.' 7.1 Statement at ¶ 34; Parmiter Decl. at ¶ 12, Ex. B.

*10 On May 4, 1998, the IGRC determined that the action requested by Plaintiff, that he be seen by a physician, had been fulfilled and that there was no objective medical information to substantiate a use of force. Defs.' 7.1 Statement at ¶ 36; Parmiter Decl. at ¶ 12, Ex. B. Davidson appealed this determination to the facility superintendent; the appeal also did not identify either the participants or the location of the use of force. Defs.' 7.1 Statement at ¶ 37; Parmiter Decl. at ¶ 13, Ex. B. On May 11, 1998, Deputy Superintendent Hodges sustained the IGRC decision, observing that there was no medical evidence of an assault by facility staff and that Davidson had seen a facility doctor on May 4th. Defs.' 7.1 Statement at ¶ 38; Parmiter Decl. at ¶ 13, Ex. B. Plaintiff appealed to the Central Office Review Committee (CORC), stating "I was assaulted by staff on 4/6/98 and my eyeglasses were taken by Sgt. Richard Smith and never returned." Defs.' 7.1 Statement at ¶ 39; Parmiter Decl., Ex. B. Again, Plaintiff failed to identify which individuals assaulted him as well as when and where the assault occurred. *Id.* CORC sustained the superintendent's decision. Parmiter Decl., Ex. B.

Notably, Plaintiff has not provided this Court with a copy of *any* grievance filed relative to the claims stated in his Second Amended Complaint. Instead, he responds to the Defendants' affirmative defense with a litany of conclusions in an attempt to demonstrate the general ineptness of the grievance program. In his Second Amended Complaint, when asked if he presented the facts relating to his claims to the grievance program, Davidson writes "Yes, [a]s to denial of medical care. As

to the assault, I was not required to due to the nature of the attack by guards, the nature of the grievance system (which can't provide money damages) and federal case law. In fact, I wasn't even required to file a grievance over the denial of medical care." 2d Am. Compl. at ¶ 4(b). Then, in the "Facts" section of the same pleading, Plaintiff asserts that, in light of his experience as an IGRC representative and his having filed "thousands of grievances and appeals during [his] incarceration," along with his extensive knowledge of exhaustion case law, he "knew that [he] had to file a grievance concerning the instant assault." *Id.* at ¶¶ 18-27. Davidson then accuses DOCS of implementing policies permitting IGRC staff to intentionally "lump" or "bury" assault and harassment allegations with other grieved issues, thereby, successfully masking such grievances in an attempt to thwart an inmate's attempt to exhaust administrative remedies. *Id.* Davidson also alleges to have witnessed such burying techniques as well as staff intentionally losing, misfiling, or destroying grievances alleging assaults. *Id.*

This Court finds Plaintiff's contradictory contentions to be utterly disingenuous and incredulous. If Plaintiff had actually witnessed such "shady dealings" first hand with regard to the burying or destroying of assault grievances, we must ask why he would not take extra steps to ensure his assault claims were properly preserved, *i.e.,* why did Plaintiff not make copies of his grievances? [13] If Plaintiff was aware of this unspoken policy of destroying grievances alleging staff assault or harassment, why did Plaintiff fail to take extra steps to ensure that the wrongs against him were vindicated? Why did Plaintiff, a seasoned *pro se* litigator, fail to lodge a complaint, for example, with the more informal and expedited grievance available when harassment is alleged? [14] Why did self-professed knowledgeable Plaintiff fail to lodge a complaint with DOCS Inspector General's Office, who bears the responsibility to internally investigate matters of employee misconduct, including allegations of unjustified/ excessive uses of force by DOCS staff against inmates? [15]

*11 Exhaustion of administrative remedies under the PLRA is an affirmative defense which must be raised by the defendants. *Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999). Once raised, the defendants bear the burden of proving that administrative remedies have not been exhausted. *Howard v. Goord,* 1999 WL 1288679, at *3 (E.D.N.Y. Dec.28, 1999). The party

opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id.* (citations omitted). Furthermore, several courts, including this one, have held that there are situations where a defendant may be estopped from asserting this affirmative defense. *Croswell v. McCoy,* 2003 WL 962534, at *4 (N.D.N.Y. Mar.11, 2003) (Sharpe, M.J.) *aff'd in unpublished opinion* No. 01-CV-547, Dkt. No. 50 (Hurd, J.); *Heath v. Saddlemire,* 2002 WL 31242204, at *4-5 (N.D.N.Y. Oct.7, 2002) (Scullin, C.J.) (affirming this Court's Report-Recommendation and Order in its entirety); *O'Connor v. Featherson,* 2002 WL 818085, at *2 (S.D.N.Y. Apr.29, 2002) (collecting cases from various districts including the 5 $^{th}$ and the 8 $^{th}$ Circuit explicitly holding such exceptions to the PLRA exhaustion requirement). A prisoner may continue with his suit despite nonexhaustion issues when

> (1) [the] inmate was led to believe by prison officials that his alleged incident was not a grievance matter and assured that his claims were otherwise investigated ... (2) an inmate makes a reasonable attempt to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts ... and (3) the state's time to respond to the grievance has expired.

*O'Connor v. Featherston,* 2002 WL 818085, at *2 (S.D.N.Y. Apr.29, 2002) (internal quotations and citations omitted).

We find that the Defendants have adequately and astutely, in light of the limited discovery available, carried their burden of proof on their affirmative defense. Instead of countering the Defendants' claims with regard to the inadequate notice Grievance # AUB-29990-98 provided, Plaintiff attempts to divert the Court's attention from his failure to exhaust his remedies to alleged improper acts of unnamed individuals. Such tactics, in our mind, are deceitful and obsequious, and are simply inadequate to excuse his failure to follow the rules he proclaims to be extensively acquainted. We therefore recommend dismissal of all claims due to Davidson's failure to exhaust

his administrative remedies. In the alternative, we note that none of Davidson's claims have any merit, and can also be dismissed, as explained below.

### 2. Personal Involvement

As stated above, it is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973).

**\*12** With regard to Defendants Graceffo, Goord and Estate of Dann, Davidson alleges that Dann authorized the use of force against him and that he advised Goord and Graceffo of his denial of his MRI and that they failed to intervene on his behalf. The claims against these Defendants must fail for the same reason we recommended dismissal of any claims against Defendants Wright, Walker, and Hodges. *See supra* Part II.B. Plaintiff fails to adequately allege in what manner, when, and why Defendant Dann sanctioned the alleged use of force. Further, the fact that he may have written a letter to Goord or had a conversation with Defendant Graceffo does not render such Defendants liable.

The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)); *see also Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (defendant may not be held liable simply because he holds a high position of authority). Davidson does not allege the

dates he allegedly contacted Goord or Graceffo nor does he provide any copies of any correspondence he sent to these Defendants. Nor, for that matter, has Davidson alleged with sufficient particularity the dates on which he was denied any medical care, namely, a MRI and/or an orthopedic consult. Since Plaintiff has not implicated Goord, Graceffo, and Dann under any of the above theories, and fails to address these claims in his Opposition to Defendants' Motion, we recommend granting Defendants' Motion for Summary Judgment and dismissing Defendants Goord, Graceffo, and Estate of Dann from this lawsuit.

### 3. Eighth Amendment Claim

Davidson alleges that on April 6, 1998, Defendants Smith and Talbot, while escorting Plaintiff at an unspecified time and at an unspecified place, yanked Davidson's handcuffed hands and arms upwards behind his back and Talbot punched him several times in the rib cage area. [16] 2d Am. Compl. at ¶¶ 1-3. Plaintiff further alleges that during the attack, Smith and Talbot told Plaintiff they were assaulting him as "payback" for his complaints and grievances filed against their fellow co-workers. *Id.*

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California,* 370 U.S. 660, 666-67, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (cited in *Tramell v. Keane, et al.,* 338 F.3d 155, 161 (2d Cir.2003)). To prove a violation of the Eighth Amendment, the Second Circuit stated that an inmate must show,

>  **\*13** (1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'

*Trammell v. Keane,* 338 F.3d 155, 161 (2d Cir.2003) (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Punishments prohibited by the Eighth Amendment include those that are "grossly disproportionate" to the severity of the crime including unnecessary and wanton inflictions of pain which are "totally without penological justification." *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (citations omitted); *see also Hope v. Pelzer,* 536 U.S. 730, 737, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

In *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley [v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6 (quoted in *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994)). Courts should consider both the objective and subjective component of an alleged violation. In assessing the objective component, the court should consider the seriousness of the injury, however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury," thus, the seriousness of the injury is relevant to the inquiry, but does not end it. *Davidson v. Flynn,* 32 F.3d at 29 n. 1 (alterations in original) (quoting *Hudson v. McMillian,* 503 U.S. at 4). With regard to the subjective component, the court should consider whether the defendants had a "wanton" state of mind when they were engaging in the alleged misconduct. Further consideration of the circumstances surrounding the alleged misconduct may be warranted. As the Court in *Hudson* explained, "[i]n determining whether the use of force was wanton and unnecessary, it may ... be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* 503 U.S. at 7 (internal quotation marks and citations omitted).

By Declarations, both Talbot and Smith adamantly deny ever using force against Davidson, that is, beyond ordinary escort-related handcuffing. Talbot Decl. at ¶ 8; Smith Decl. at ¶ 10. In support of their defense, Talbot and Smith attached to their Declarations facility logs for SHU and E-Block on April 6-7. Because Davidson failed to specify a time when the alleged attack took place, or

even the circumstances surrounding the attack, *i.e.,* where he was escorted to, the Defendants were at somewhat of a disadvantage in properly defending themselves against Plaintiff's unsupported and unsubstantiated claims. The facility logs help paint a clear picture for this Court of the events as they transpired on April 6th, as set forth in the facts section above. *See supra* Part I.B, Facts. Plaintiff contends that he was "forcibly removed from Auburn's SHU" on April 6th, purportedly by Defendants Talbot and Smith.2d Am. Compl. at ¶¶ 2-4. However, as indicated by the facility logs, Plaintiff was escorted from SHU, along with other prisoners, at approximately 11:45 a.m. and was taken to Walsh Regional Medical Center, neither Defendant Talbot nor Smith escorted Plaintiff from SHU that morning. Talbot Decl. at ¶ 9, Ex. A-1 (SHU log); Smith Decl. at ¶ 11, Ex. A-1 (SHU log). In fact, on that date, Talbot worked a 3:00 p.m.-11:00 p.m. shift and, therefore, wasn't even present in the facility at the time this escort took place. Talbot Decl. at ¶ 9. Later that day, upon Plaintiff's return to the facility at 4:45 p.m., Talbot, whose shift had begun, along with two other officers escorted Plaintiff to the E-Block; facility logs indicate that Smith was not present during that escort. Talbot Decl. at ¶ 10, Exs. A-1 & A-2. Facility logs further indicate that Davidson made no complaints about a use of force against him during any of the escorts that day.

**\*14** The first time Talbot and Smith escorted Plaintiff was at 5:41 p.m., when, after his relentless complaints about chest pains, they brought him from E-Block to the infirmary. Talbot Decl. at ¶ 15, Ex. A-2; Smith Decl. at ¶ 15, Ex. A-2. At 5:45 p.m., Davidson was examined by a facility nurse and did not complain about any use of force, nor did he exhibit any traumatic injury. Graceffo Decl., Ex. A (AHR, entry dated Apr. 6, 1998, at 1745 hrs). Talbot and Smith then escorted Plaintiff back to E-Block, and then, after Davidson received his evening meal and medications, they escorted him back to his cell at approximately 6:14 p.m. Talbot Decl. at ¶ 16, Ex. A-2; Smith Decl. at ¶ 16, Ex. A-2. Log entries reflect no complaint of physical mistreatment or traumatic injury. Talbot Decl., Ex. A-2. Plaintiff's personal property was brought to him at 8:15 p.m. and 8:35 p.m.; Davidson made no complaints of physical mistreatment or traumatic injury. Smith Decl. at ¶¶ 18-19, Ex. A-2. In fact, it was not until after midnight on April 7th, after again being denied access to emergency sick call, that Davidson for the first

time complained of abuse by security staff. Talbot Decl. at ¶ 20; Ex. A-2.

In further support of their contentions that no assault occurred, Defendants supplied Declarations of various non-parties, who have no stake in this particular litigation, attesting to the general procedures of the facility, which must be undertaken when staff impose the use of force, *i.e.* reports and investigations lodged to ensure that only the amount of force necessary was used. *See generally* Laurence M. Cheney, Liason Officer at Auburn, Decl. at ¶¶ 3-4, Ex. A (indicating that no "Use of Force" reports involving Davidson were generated for events occurring on April 6, 1998, however, a Use of Force incident did occur on April 7, 1998, when Davidson was being escorted to the Mental Hygiene Unit and began kicking the glass cover of a fire alarm panel; none of the Defendants were involved in that incident); Joseph Bellnier, Deputy Superintendent for Security at Auburn, Decl., Ex. A (explaining DOCS Directive 4944, which sets forth the policies and procedures following a use of force against an inmate); Timothy Costello Decl., Ex. A (describing April 7th incident during his escort of Davidson and use of force against Davidson).

To further bolster their claims that Davidson had not been the victim of an assault by staff on April 6th, Defendants offer the Declaration of Nurse Richard Sharples who responded to Plaintiff's midnight complaints. Sharples' refreshed his recollection of the events by reviewing Davidson's AHR as well as nurses' notes for April 6-7, 1998. Sharples Decl. at ¶ 4. Shortly after midnight, on April 7th, Sharples and a staff sergeant responded to Davidson's complaints that he had been assaulted by security staff. *Id.* at ¶ 6. Sharples arrived at E-Block at approximately 12:30 a.m. *Id.* at ¶ 7. Prior to making his presence known to Davidson, Sharples spent some time observing Davidson in his cell. *Id.* Sharples stood by the officers' desk, located approximately ten to twenty feet from Davidson's cell, and had an unobstructed view of Davidson through his cell door. [17] *Id.* Sharples observed Davidson walk, bend his body, and move his limbs without difficulty. *Id.* Sharples then made his presence known and conducted a physical examination of Davidson without entering the cell. *Id.* at ¶ 8. Davidson described his subjective complaints of pain in his knee, right neck, and left shoulder, yet, he was able to remove his shirt without complaint or apparent

physical disability. *Id.* at ¶ 9. Davidson complained of lower back pain but was able to bend over smoothly without apparent spasms. *Id.* After examining Davidson's body, Sharples could not detect any evidence of trauma injuries. *Id.* With Davidson's arm extended through the cell door, Sharples measured his blood pressure with a sphygmomanometer, and checked his heart rate and respiration with a stethoscope. *Id.* at ¶ 10. At the conclusion of the examination, Davidson requested that his blood pressure be read again from his other arm, which he extended through the opening of the cell door. *Id.* As Sharples started to comply, Davidson grabbed hold of the blood pressure cuff and tried to yank it into his cell and broke the equipment. Notably, Davidson's mobility, range of motion, and limb strength were unimpaired. Davidson retained the blood pressure cuff, but ultimately returned it to security staff. *Id.; see also* Talbot Decl., Ex. A-2 (log entries indicating Davidson kept cuff and later returned it).

**\*15** In support of his allegations, and in countering Defendants' sworn testimony and documentary evidence, Plaintiff essentially avers that the entire staff covered up the assault by not properly documenting the multiple complaints he lodged that day. We find that such statements are insufficient to create a genuine issue of material fact. The Court has closely examined the facility logs and notes the great details included therein. If such a conspiracy existed, then how does Plaintiff account for the entry indicating his complaints of staff abuse and the immediate response by all staff. Why was that entry not similarly obscured?

Once a moving party has met its burden of showing that no triable issues of fact exist, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *Young v. Corbin,* 889 F.Supp. 582, 284 (N.D.N.Y.1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis added)). "A dispute regarding a material fact is genuine 'if evidence is such that a reasonable jury could return a verdict for the non-moving party.' " *Young,* 889 F.Supp. at 584 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, once the moving party establishes a *prima facie* case demonstrating an absence of a genuine issue of material fact, "the non-moving party must come forward with enough evidence to lead a rational trier of fact to find for the non-

moving party, [and t]he motion will not be defeated by a non-movant who raises merely a 'metaphysical doubt' concerning the facts or who offers only conjecture or surmise." *Young,* at 584 (quoting *Matsushita,* 475 U.S. at 586) (emphasis added).

We find Plaintiff's feeble attempts to create an issue of fact by generally "attesting" to the falsity of all sworn statements submitted by the Defendants and other non-parties to be unsavory. Again, even if we were to believe that an assault took place, we cannot overlook the fact that Plaintiff failed to ensure that his claims were properly investigated, whether through the various avenues available in the facility, DOCS, or even the Inspector General's Office. Plaintiff's failure to protect his rights in this instance, when he has clearly done so in so many other instances, certainly weighs against his claims and exposes what can only be categorized as a disingenuous and a utter waste of judicial resources. [18] Without making any credibility determinations, which this Court acknowledges is better left to the trier of fact, we find that Defendants have more than met their burden in moving for summary judgment on the objective prong alone, in that Plaintiff cannot show that any assault took place, and his Eighth Amendment claims should be dismissed as frivolous. [19]

### 4. Retaliation Claims

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected harassment in retaliation for the exercise of a constitutional right such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir.1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir.1988). To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Morales v. Macklam,* 278 F.3d 126, 131 (2d Cir.2002) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)); *see also Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002) (alleging false disciplinary report); *Hendricks v. Coughlin,* 114 F.3d 390 (2d Cir.1997) (alleging retaliatory transfers). The Second Circuit has noted that retaliation claims are

prone to abuse, therefore courts should examine such claims "with skepticism and particular care." *Bennett,* 343 F.3d at 137; *Dawes v. Walker,* 239 F.3d at 491 ("[V]irtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act."); *see also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

**\*16** In addressing the first prong of the retaliation analysis, we note that Plaintiff's claims falls miles short of adequately stating a retaliation claim. Davidson alleges he was attacked as retaliation for filing grievances, a constitutionally protected activity, however, he fails to allege when such grievances were filed. Thus, from the outset, this Court has no way of assessing the strength or validity of such claims. We therefore recommend granting Defendants' Motion for Summary Judgment as to any retaliation claims.

### 5. Request for Further Discovery

In his opposition to Defendants' Motion, Plaintiff requests that the Motion be held in abeyance pending further discovery. Plaintiff's request for more discovery to oppose the Motion is denied. Plaintiff has had ample time for discovery in this matter. When making such a request in opposition to a motion for summary judgment, the Second Circuit requires an affidavit sufficiently detailing:

1) the nature of the uncompleted discovery;

2) how the facts sought are *reasonably expected* to create *genuine issues* of material fact;

3) what efforts the affiant has made to obtain those facts; and

4) why those efforts were unsuccessful.

*Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137 (2d Cir.1994); FED. R. CIV. P. 56(f). Plaintiff's purported Rule 56(f) affidavit falls short of establishing the above factors. In fact, Plaintiff only seeks more discovery to provide proof that "grievances submitted by prisoners were frequently 'lost' or 'consolidated' by [the Inmate Grievance Supervisor]." Dkt. No. 56, Pl.'s Aff. at ¶ 3. The Court considers such issue to be collateral to the constitutional claims at hand, namely, retaliation,

excessive force, and denial of medical care.[20] Moreover, limited discovery that may possibly address the issue of exhaustion would not shed any further light on the merits of his constitutional claims, which the Court has already found to be frivolous and lacking merit.

### III. CONCLUSION

WHEREFORE, it is hereby

RECOMMENDED, that Defendants Wright, Walker, Hodges, Leonard, and United Health Care, be dismissed from this action, without prejudice, in accordance with FED. R. CIV. P. 4(m), due to Plaintiff's failure to timely effectuate service, or in the alternative, that such Defendants be dismissed from this action, with prejudice, in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii), due to Plaintiff's failure to properly state a cause of action; and it is further

RECOMMENDED, that Defendants' Motion for Summary Judgment (Dkt. No. 46) be granted and Plaintiff's entire Second Amended Complaint be dismissed without prejudice due to Plaintiff's failure to exhaust his administrative remedies; and it is further

RECOMMENDED, that Defendants' Motion for Summary Judgment (Dkt. No. 46) be granted and Plaintiff's entire Second Amended Complaint be dismissed with prejudice as frivolous, in light of Plaintiff's failure to allege any personal involvement of Defendants Graceffo, Goord, and Estate of Dann, and due to his failure to state a claim for retaliatory excessive force against Defendants Smith and Talbot; and it is further

**\*17** ORDERED, that Plaintiff's request to hold Defendants' Motion in abeyance pending further discovery is denied; and it is further

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report to the U.S. DISTRICT JUDGE assigned to this case. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT TO THE*

*U.S. DISTRICT JUDGE WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993); Small v. Sec'y of Health and Human Servs. 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).*

SO ORDERED

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 928620

Footnotes

1    The allegation against Defendant Hodges is included in Plaintiff's First Amended Complaint, but not his Second Amended Complaint. *See infra* Part II.B.

2    The Motion was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

3    Since the actions alleged in the Complaint took place on or about April 6, 1998, the Complaint, filed on April 3, 2001, was timely filed, albeit barely with only three days to spare, in accordance with the three-year statute of limitations for actions brought pursuant to 42 U.S.C. § 1983. *See, e.g., Dory v. Ryan, 999 F.2d 679, 681 (2d Cir.1993).*

4    USM-285, entitled "Process Receipt and Return," is the form utilized by the Marshals Service in effectuating service of process. *See* United States Marshals Service website, *available at http:// www.usmarshals.gov/process/index.html* (last visited Mar. 30, 2005). An inmate seeking to file a civil action in federal court is provided an instruction packet, which contains, *inter alia,* a memorandum from the Clerk of the Court explaining how to fill out the USM-285 form. *See* United States District Court, Northern District of New York website forms page, *available at http://www.nynd.uscourts.gov/ forms.htm* (last visited Mar. 30, 2005).

5    We directed an amendment of the pleading in light of the fact that Plaintiff's opposition to Defendants' Motion set forth in greater detail the steps he took in exhausting his remedies.

6    The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.1, which were not specifically countered or opposed by Plaintiff. We acknowledge that Defendants have submitted multiple Declarations and Exhibits in support of their Motion. Many of the facts in those Declarations were summarily denied by Plaintiff. As explained more fully below, Plaintiff's conclusory denials of these sworn statements are insufficient to create a genuine issue of material fact. Many of those facts shall be discussed in addressing the sufficiency of Plaintiff's Eighth Amendment claims. *See infra* Part II.C.3.

7    According to the Declaration submitted by Defendant Anthony J. Graceffo, M.D.,

   "Emergency Sick Call" is a specific procedure available to inmates by which they may receive expedited physician/ physician's assistant attention for urgent medical conditions. Initial evaluations are performed by nurses, who determine whether it is necessary to bring a matter to the immediate attention of a physician or a PA. When necessary, nurses and/or physicians will interrupt their work, including treatment of other inmates, in order to give priority to inmates requiring emergency care.

   Dkt. No. 46, Graceffo Decl. at ¶ 9.

8    Woodward is not a Defendant in this action.

9    Sharples is not a Defendant in this action.

10   Davidson has filed twenty (20) lawsuits in this district alone:

   (1) *Davidson v. Flynn,* 86-cv-316 (TJM/DEP) (closed on Aug. 15, 2001-Statistically and administratively closed w/ o prej.);

   (2) *Davidson v. Boulinger,* 87-cv-689 (LEK/RWS) (closed on Feb. 2, 2000-Defs.' Mot. for Summ. J. granted; appeal denied on Aug. 7, 2000, as indisputably lacking merit as to be rendered frivolous);

   (3) *Davidson v. Dean,* 88-cv-050 (TJM/DS) (transferred to S.D.N.Y. on Nov. 25, 1996);

   (4) *Davidson v. Coughlin,* 88-cv-646 (TJM/DEP) (closed on Aug. 15, 2001-Statistically and administratively closed w/o prej.);

   (5) *Davidson v. Riley,* 88-cv-1042 (TJM) (closed on Mar. 18, 1997-Defs.' Mot. to Dismiss granted at trial);

   (6) *Davidson v. Leonardo,* 88-cv-1366 (TJM/RWS) (closed on Aug. 4, 2000-Defs.' Mot. for Summ. J. granted; appeal denied on June 17, 2002, aff'd district court judgment);

   (7) *Davidson v. McHugh,* 88-cv-1367 (TJM/DS) (closed on July 1, 1994-Defs.' Mot. for Summ. J. granted; appeal denied on Jan. 30, 1995, as indisputably lacking merit as to be rendered frivolous);

(8) *Davidson v. Jones,* 88-cv-1368 (TJM/DS) (closed on Aug. 25, 1994-Defs.' Mot. for Summ. J. granted; appeal denied on Jan. 30, 1995, as indisputably lacking merit as to be rendered frivolous);

(9) *Davidson v. Cox,* 89-cv-498 (TJM/DS) (closed on Jan. 18, 1994-Defs.' Mot. for Summ. J. granted; appeal denied on May 9, 1994, as frivolous);

(10) *Davidson v. Eastman,* 89-cv-1018 (TJM/DS) (closed on July 18, 1994-Defs.' Mot. for Summ. J. granted; appeal dismissed on Nov. 9, 1994);

(11) *Davidson v.Scully,* 90-cv-1187 (CGC/DS) (closed on Sept. 16, 1992-Defs.' Mot. for Summ. J. granted; appeal denied on Dec. 6, 1993, affirming district court judgment);

(12) *Davidson v. Henderson,* 90-cv-1226 (TJM/DEP) (closed on June 10, 2004-Defs.' Mot. for Summ. J. granted; currently on appeal);

(13) *Davidson v. Greifinger,* 91-805 (FJS/DS) (closed on Dec. 23, 1996-Defts' Mot. for Summ. J. granted; appeal denied on Oct. 29, 1998, affirming district court judgment);

(14) *Davidson v. Coughlin,* 93-cv-272 (TJM/DEP) (closed on Aug. 15, 2001-Statistically and administratively closed w/o prej.);

(15) *Davidson v. Graceffo,* 97-cv-1204 (FJS/DRH) (closed on Aug. 13, 2001-Defs.' Mot. for Summ. J. granted; appeal denied on Jan. 28, 2002, as lacking merit and no arguable basis in law and future frivolous appeals will be subject to Rule 38 sanctions);

(16) *Davidson v. Komanecky,* 97-cv-1415 (FJS) (closed on Jan. 22, 2002-failure to prosecute; appeal pending);

(17) *Davidson v. Hoepner,* 97-cv-1660 (FJS/GJD) (closed on Feb. 26, 2002-Statistically and administratively closed w/o prej.);

(18) *Davidson v. Terrazzini,* 98-cv-1555 (FJS/DEP) (closed on June 25, 2002-Defs.' Mot. for Summ. J. granted; appeal dismissed on Dec. 23, 2004, failure to provide prisoner authorization form);

(19) *Davidson v. O'Connell,* 00-cv-422 (NAM/GS) (closed on Sept. 15, 2003-Defs.' Mot. for Summ. J. granted; appeal dismissed on July 28, 2004, failure to provide prisoner authorization form);

(20) *Davidson v. Talbot,* 01-cv-473 (FJS/RFT) (currently pending).

In light of Davidson's litigation track record, and the Second Circuit's recognition that Davidson has stepped into that rare status for inmate litigants of being deemed not entitled to "special solicitude," we place both parties on notice that FED. R. CIV. P. 11 sanctions may be applicable, when warranted, for any further litigation pursued by Davidson. However, Rule 11 applicability shall not be considered for this case. *See infra* n. 18

**11** Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b).

**12** In Davidson's First Amended Complaint, the sole allegation against Defendant Hodges is that he "authorized" the use of force. Dkt. No. 6, 1st Am. Compl. at ¶ 11. However, in that same pleading, Davidson fails to elaborate when and how such authorization occurred. Furthermore, the allegation of authorization is completely omitted from his Second Amended Complaint. *Compare* Dkt. No. 6, 1st Am. Compl. *with* Dkt. No. 36, 2d Am. Compl. Thus, we may properly deem any claims against Defendant Hodges as abandoned. *See, e.g., Austin v. Ford Models, Inc.,* 149 F.3d 148, 155-57 (2d Cir.1998). However, we need not address this abandonment issue in light of Plaintiff's failure to state a cause of action as explained below.

**13** We acknowledge that an inmate may not possess the funds necessary for copying, however, Plaintiff obviously maintained copies of other grievances filed on other matters since such unrelated grievances were attached to his pleadings and opposition papers.

**14** *See* DOCS Directive 4040, codified at N.Y. COMP.CODES R. & REGS, tit. 7, § 701.11.

**15** *See generally* Kenneth McLaughlin Decl. (indicating that Plaintiff never requested the IG to investigate any use of force on April 6, 1998).

**16** Davidson alleges his hands were handcuffed behind his back during the escort and that the assault was completely unprovoked.2d Am. Compl. at ¶¶ 2-4.

**17** Sharples explains that the cell door consisted of rows of vertical steel bars running from the floor to the upper jamb, approximately seven feet high, the cell was lit from within, the lights in the gallery were on, and there was no sheet or anything else hanging from the inside of the door. Sharples Decl. at ¶ 7.

**18** Again, we put the parties on notice that should this prisoner continue to bring such frivolous actions, he may be subject to Rule 11 sanctions as that rule is in no way limited, by its very terms, to attorneys admitted to the bar. *See Cavallary v. Lakewood sky Diving Ctr.,* 623 F.Supp. 242, 245-46 (S.D.N.Y.1985) (*pro se* plaintiff not immune from Rule 11); *Taylor v. Prudential Bache Sec., Inc.,* 594 F.Supp. 226, 228-29 (N.D.N.Y.), *aff'd without opinion,* 751 F.2d 371 (2d Cir.1984)

("oppressive" and "unfounded" conduct by *pro se* plaintiff warranted sanctions in bringing "frivolous" and "spiteful" action); *see also McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988) (noting that in spite of *pro se* litigants being held to a less stringent standard, all litigants, including *pro ses,* have an obligation to inform themselves of and comply with court orders and procedural rules); *Edwards v. INS,* 59 F.3d 5, 8-9 (2d Cir.1995) (same); *Young v. Corbin,* 889 F.Supp. 582, 585-86 (N.D.N.Y.1995) (imposing minimal Rule 11 sanctions on *pro se* inmate plaintiff and barring commencement of future actions until the fine is paid).

> Rule 11 states, in pertinent part:
>
> By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

While the Court could have initiated Rule 11 sanctions for this action on its own initiative, we decline to do so since at this juncture fair notice of such intent has not been provided. However, considering Plaintiff's admissions of filing more than one thousand claims, which we consider to be sheer braggadocio, the Court's personal knowledge of more than one hundred claims filed in the New York State Court of Claims by the Plaintiff, the Second Circuit's further recognition of his overly litigiousness in federal court based upon his contemporaneous filing of over thirty federal actions, as well as the Second Circuit's multiple admonitions to this Plaintiff in bringing frivolous appeals, the probability of many if not all of his legal actions are meritless and, as such, this Plaintiff is particularly deserving of notice of possible future Rule 11 sanctions for frivolous litigation. *See supra* note 10. Davidson above all has stretched judicial resources beyond justification with his vexatious lawsuits.

19 Due to Plaintiff's failure to properly serve Defendants Leonard and United, we need not address Plaintiff's claims of being denied access to medical care. In any event, because Plaintiff has failed to give a proper framework for precisely when his access to medical care was inhibited, we cannot adequately address such claims. Further, even if we did have such information, we note that Plaintiff's Eighth Amendment claim based on the denial of medical care would fail since he cannot establish a serious medical condition. *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir.1994) (stating that a medical need is serious if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain' "). Plaintiff has failed to provide any documentation evidencing his alleged shoulder injury was a condition of urgency or even caused him extreme pain.

20 We note that Plaintiff has not detailed what efforts he made to obtain discovery not only with regard to exhaustion issues but also with regard to the substance of his constitutional claims. We further note that, as evidenced by AAG Quackenbush's Declaration, and Exhibit attached therewith, Plaintiff has failed in his obligation to cooperate in good faith in discovery thereby stymying Defendants' efforts to uncover specific facts underlying Plaintiff's claims.

---

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 1877144
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Ronald DAVIDSON, Plaintiff,

v.

John TALBOT, Auburn Correctional Facility;
Richard Smith, Auburn Correctional Facility;
M.D. Anthony Graceffo, Facility Health Services
Director; Hans Walker; Gary Hodges, Deputy
Superintendent Auburn Correctional Facility;
Glen Goord, Commissioner of D.O.C.S.;
M.D. Lester Wright, Chief Medical Officer
of D.O.C.S.; United Health Care; Estate of
Edward Dann; and Jerry S. Leonard, Chief
Medical Officer for N.Y.S. D.O.C.S., Defendants.

No. 9:01-CV-473 (FJS/RFT).
|
July 5, 2006.

### Attorneys and Law Firms

Ronald Davidson, Wallkill, NY, pro se.

Charles J. Quackenbush, AAG, Office of the New York,
State Attorney General, The Capitol, Albany, NY, for
Defendants.

### MEMORANDUM-DECISION AND ORDER

FREDERICK J. SCULLIN, JR., Senior District Judge.

### I. INTRODUCTION

*1 In his second amended complaint, which he filed on
May 13, 2003, *see* Dkt. No. 36, Plaintiff asserts several
Eighth Amendment claims against various Defendants. [1]
Specifically, he claims that, on or about April 6, 1998,
Defendants Talbot and Smith attacked him and that
subsequently Defendants Leonard and United Health
Care denied him the medical care he needed to treat the
injuries he suffered as a result of that attack. In addition,
Plaintiff contends that Defendants Walker, Hodges and
Dann authorized the use of force that caused his injuries.

Finally, he alleges that Defendants Goord and Graceffo
failed to intervene after he apprised them of his situation.

On June 1, 2004, Defendants Goord, Graceffo, Smith
and Talbot moved for summary judgment on the ground
that Plaintiff's complaint failed to state a claim against
them upon which relief could be granted. Defendant Dann
joined the motion after Plaintiff successfully effected
service of process on him.

On March 31, 2005, Magistrate Judge Treece issued
a Report-Recommendation and Order in which he
recommended that this Court dismiss Plaintiff's claims
against Defendants Walker, Hodges and Wright, upon
whom Plaintiff had not successfully effected service.
Alternatively, Magistrate Judge Treece recommended
that the Court dismiss Plaintiff's claims against
these Defendants because Plaintiff had not alleged
that they were personally involved in any of the
alleged constitutional violations. Finally, with regard to
Defendants Wright, Leonard, [2] and United Health Care
Group, Magistrate Judge Treece recommended that this
Court dismiss Plaintiff's claims against them because their
actions, as alleged, did not amount to a constitutional
violation.

Alternatively, with respect to the claims against
Defendants Goord, Graceffo, Smith, Talbot and Dann,
Magistrate Judge Treece found that Plaintiff had not
exhausted all of his administrative remedies and further
determined that none of Plaintiff's claims against these
Defendants had any merit and could be dismissed on that
ground alone.

For all of the above-stated reasons, Magistrate Judge
Treece recommended that this Court grant Defendants'
motion for summary judgment and dismiss Plaintiff's
second amended complaint in its entirety. Currently
before the Court are Plaintiff's objections to that
recommendation.

### II. DISCUSSION

#### A. Standards of review

##### 1. Review of Magistrate Judge's report-recommendation

"The Court reviews *de novo* those findings and
recommendations in a magistrate judge's report-

recommendation to which a party has filed timely objections and for clear error those parts of the report-recommendation to which a party does not object." *Gill v. Smith,* 283 F.Supp.2d 763, 766 (N.D.N.Y.2003) (citing 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72; *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.1990)). The district court has broad latitude when reviewing a report-recommendation and may reject or modify the entire report-recommendation or specific portions therein. *See Jermosen v.. Coughlin,* No. 87 Civ. 6267, 1993 WL 267357, *2 (S.D.N.Y. July 9, 1993) (citing 28 U.S.C. § 636(b)(1)).

### *2. Summary judgment standard*

**\*2** A court will grant a motion for summary judgment only where "there is no genuine issue as to any material fact and when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). "In assessing the record, [the court will resolve] all ambiguities and [draw all] reasonable inferences ... in a light most favorable to the non-moving party." *Id.* (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)). Moreover, the court must construe a *pro se* litigant's pleadings and submissions more liberally than those that an attorney drafts. *See Baumann v. Walsh,* 36 F.Supp.2d 508, 510 (N.D.N.Y.1999) (citing *Platsky v. CIA,* 953 F.2d 26, 28 (2d Cir.1991)). Nonetheless, even where the non-movant is a *pro se* litigant,

> [o]nce the movant has established a *prima facie* case demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, ..., or on the basis of conjecture or surmise.

*Bryant,* 923 F.2d at 982 (internal citation omitted).

### B. Service of process and personal jurisdiction

A plaintiff is responsible for the service of a summons and complaint upon each defendant in an action. *See* Fed.R.Civ.P. 4(c)(1). The plaintiff is also responsible for furnishing the person effecting that service with the documents necessary to do so. *See id.* If a plaintiff is incarcerated, the Clerk of the Court will have the U.S. Marshals Service effect service of process on the plaintiff's behalf pursuant to 28 U.S.C. § 1915. *See* 28 U.S.C. § 1915(d); Fed.R.Civ.P. 4(c)(2). If a plaintiff does not effect service of his summons and complaint within 120 days after filing his complaint, the court may dismiss the action without prejudice as to any unserved defendant. *See* Fed.R.Civ.P. 4(m). However, if a plaintiff shows good cause for his failure to effect service within the required time-frame, "the court shall extend the time for service for an appropriate period." *Id.*

Magistrate Judge Treece found that the Court did not acquire personal jurisdiction over Defendants Walker, Hodges, Wright, Leonard, or United Health Care because Plaintiff failed to effect service on these Defendants. On August 21, 2001, the Clerk of the Court issued summonses for all Defendants for whom Plaintiff had provided addresses. With regard to Defendant Leonard, service was returned with a note "not at address." *See* Report-Recommendation and Order at 4. "On February 1, 2002, Plaintiff filed a Motion for Injunctive Relief seeking an order from the Court directing (1) the U.S. Marshals Service 'to use their resources' to locate Defendant Leonard and serve him with process." *See id.* [3]

**\*3** Due to the relationship between United Health Care, [4] where Defendant Leonard was the President and Chief Executive Officer, and DOCS, Court staff wrote to the Deputy Counsel for DOCS to request an address for Defendant Leonard. *See id.* The Court also directed Defendants not to respond to Plaintiff's motion for injunctive relief until DOCS had responded to the Court's inquiry. *See id.* The Court further instructed the Marshals Service to explain to the Court, in writing, what efforts it had made to effect timely service on the remaining Defendants. *See id.* On May 2, 2002, the Court received a letter from DOCS Deputy Counsel with an address for Defendant Leonard. *See id.* at 5. On May 16, 2002, the Court received a response from the Marshals Service, in which it advised the Court that it had never received summonses, copies of the complaint, or USM-285 forms for any Defendants other than Defendants Leonard and Dann. *See id.*

Shortly thereafter, the Court directed the Clerk of the Court to reissue copies of the summonses and the amended complaint for each Defendant and to forward them to the Marshals Service for service on each Defendant. *See id.* The Court also instructed Plaintiff to fill out the necessary USM-285 forms for each Defendant. *See id.* Although the Clerk of the Court reissued the summonses, *see id.,* the summonses for Defendants Walker and Hodges were returned unexecuted with a note to Plaintiff informing him that the Marshals Service would require notification in writing should he desire to make further attempts at service. *See id.* The Marshals Service never received such notification. *See id.*

Once again, on June 17, 2003, the Court revisited the issue of why a summons had not been returned for Defendant Leonard and asked the Marshals Service to provide the Court with a status report about its attempts to serve Defendants. *See id.* at 6. The Clerk of the Court reissued a summons for Defendant Leonard and informed Plaintiff that he had failed to provide USM-285 forms for "all defendants to be served." *See id.* On May 28, 2004, the summons for Defendant Leonard was returned unexecuted. *See id.* Plaintiff had provided the address for DOCS General Counsel, who was not designated as agent to accept process. *See id.* at 7.

Finally, Magistrate Judge Treece found that the record was unclear what, if any, attempts the Marshals Service had made to serve Defendant Wright. *See id.* at 15. Nonetheless, Magistrate Judge Treece concluded that the Court did not have jurisdiction over Defendant Wright because he was never properly served with process. *See id.*

The Court has reviewed the entire record in this case and finds that there is nothing to indicate that Plaintiff provided the appropriate summonses and USM-285 forms to the Marshals Service as the Court instructed him to do. Moreover, Plaintiff does not object to Magistrate Judge Treece's conclusion that he did not effect service upon these Defendants. *See, generally,* Dkt. No. 61. Accordingly, the Court adopts Magistrate Judge Treece's recommendation and grants Defendants' motion for summary judgment and dismisses Plaintiff's claims against Defendants **Walker, Hodges, Wright, Leonard and United Health Care** on the ground that the Court has not acquired personal jurisdiction over them.

### C. Exhaustion of administrative remedies

**\*4** The Prison Litigation Reform Act ("PLRA") requires that, before commencing a suit in federal court, a prisoner must exhaust all available administrative remedies. *See Marvin v. Goord,* 255 F.3d 40, 42 (2d Cir.2001). The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

DOCS has established a three-step grievance process. *See Hemphill v. New York,* 380 F.3d 680, 682 (2d Cir.2004). In the first step, an inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within fourteen calendar days of the incident about which he is complaining. *See id.* (footnote omitted). The IGRC has seven days to resolve the issue. *See id.* If the IGRC renders a decision adverse to the inmate, he may appeal that decision to the facility's superintendent. *See id.* If the inmate receives an unfavorable decision from the superintendent, he may appeal that decision to the Central Office Review Committee ("CORC"), which must render a decision within twenty working days. *See id.* (footnote omitted). Each step of the process is documented. *See id.* "Generally, if [an inmate] fails to complete this three-step process prior to commencing his § 1983 litigation, the court will conclude that he has not exhausted his administrative remedies." *Hoover v. Hardman,* No. 9:99-CV-1855, 2005 WL 1949890, \*2 (N.D.N.Y. Aug. 15, 2005) (citing *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002)).

Magistrate Judge Treece determined that Defendants had submitted evidence that Plaintiff had not provided adequate notice of his grievance stemming from the incident which allegedly occurred on or about April 6, 1998. Therefore, he recommended that the Court dismiss Plaintiff's claims due to his failure to exhaust his administrative remedies.

Plaintiff objects to this recommendation, stating that he did file all required grievances and appeals with DOCS. *See* Dkt. No. 61 at ¶ 14. Plaintiff further asserts that, even if he did not file all of the necessary grievances and appeals, the overwhelming number of appeals that he did file, and which Defendants acknowledge, identified the parties involved in the attack and alerted all Defendants to the nature of the problems and the means to remedy

some or all of them. *See id.* at ¶¶ 14-15. Plaintiff also argues that he provided more information than CORC requires. *See id.* at ¶ 17. Finally, Plaintiff contends that he did not need to include more information in his grievance because all that is required is that an inmate provide "enough information about the conduct complained of which allows prison officials to take appropriate responsive measures." *See id.* at ¶ 19.

**\*5** Although Plaintiff argues that he exhausted his administrative remedies, he does so in conclusory terms and without providing any facts or documentation to refute Defendants' evidence that he did not exhaust these remedies. Accordingly, the Court adopts Magistrate Judge Treece's recommendation and grants Defendants' motion for summary judgment dismissing Plaintiff's second amended complaint on the ground that he failed to exhaust his administrative remedies with regard to any of his claims.

### D. The merits of Plaintiff's claims [5]

#### *1. Plaintiff's claims against Defendants Graceffo, Goord and Dann*

In order for a defendant to be liable under § 1983, he must have been personally involved in the alleged deprivation of an inmate's constitutional rights. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Hoover,* 2005 WL 1949890, at \*4 (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)) (footnote omitted).

For purposes of a § 1983 claim, absent a showing of some personal responsibility, the general doctrine of respondeat superior is insufficient to hold a supervisor liable for the actions of his subordinates. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citation omitted).

Magistrate Judge Treece found that Plaintiff had failed to allege in what manner, when and why Defendant Dann sanctioned the alleged use of force. Furthermore, he concluded that the fact that Plaintiff might have written a letter to Defendant Goord and that he might have had a conversation with Defendant Graceffo were insufficient to hold those Defendants liable for any alleged violation of Plaintiff's constitutional rights. Specifically, Magistrate Judge Treece noted that Plaintiff had not alleged the dates on which he contacted Defendants Goord and Graceffo nor had he provided copies of any correspondence. Finally, Magistrate Judge Treece found that Plaintiff had failed to allege, with sufficient particularly, the dates on which he was denied medical care.

Plaintiff objects, arguing that he alerted all Defendants to the nature of his problems and the means to remedy them. *See* Dkt. No. 61 at ¶ 15. Plaintiff also claims that his grievance and complaint provided more than fair notice of his claim against Defendant Wright. *See id.* at ¶ 24.

**\*6** Despite Plaintiff's arguments to the contrary, he has failed to come forward with any evidence to create a triable issue of fact with regard to his claims against these Defendants. There is nothing in the record to indicate that these Defendants directly participated in the alleged violations of his constitutional rights, failed to remedy any alleged violations, were grossly negligent, or exhibited deliberate indifference to Plaintiff's rights. Nor has Plaintiff come forward with any evidence concerning when he contacted Defendants Goord or Graceffo, and the mere assertion that Defendant Goord ignored his letter is insufficient to establish personal involvement.

More specifically, with respect to Defendant Graceffo, Plaintiff merely alleges that he denied him an MRI and failed to intervene on his behalf when alerted to the situation. These allegations fall far short of constituting a constitutional violation. Plaintiff does not

have a constitutional right to any medical treatment that he deems necessary. Rather, he must establish that Defendants were deliberately indifferent to a serious medical need. In this case, however, there is nothing in the record to indicate either that Plaintiff suffered from an objectively serious medical condition or that Defendant Graceffo acted with deliberate indifference.

Finally, with regard to his claims against Defendant Dann, Plaintiff does not provide any details about how, why, or when Defendant Dann sanctioned a use of force against him. Nor does Plaintiff allege that Defendant Dann created a policy under which the alleged use of force occurred.

Accordingly, for all of the above-stated reasons, the Court adopts Magistrate Judge Treece's recommendation and grants Defendants' motion for summary judgment with regard to Plaintiff's claims against Defendants Goord, Graceffo and Dann.

### 2. Plaintiff's claims against Defendants Talbot and Smith

" ' "[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." ' " *Hudson v. McMillian,* 503 U.S. 1, 5 (1992) (quotation omitted). Moreover, a correction officer's excessive use of force may constitute cruel and unusual punishment even if it does not result in a serious injury to the inmate. *See id.* at 7. " '[T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." ' " *Id.* at 6 (quotation omitted); *see also Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994). Finally, an excessive force claim has an objective and a subjective component. *See Hudson,* 503 U.S. at 8. "[C]ourts considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id.* (citation omitted).

**\*7** Magistrate Judge Treece noted that, because Plaintiff failed to specify the time, place and circumstances surrounding the alleged attack, Defendants were at a disadvantage in mounting a defense against Plaintiff's unsupported and unsubstantiated claims. Furthermore, he found that the facility logs from the day the alleged

attacks occurred, April 6, 1998, did not support Plaintiff's excessive force claim because those logs indicated that no complaints regarding the use of force or injuries were lodged on that date. Furthermore, Defendants submitted the declarations of non-parties that support their assertion that an attack never occurred. In addition, Magistrate Judge Treece concluded that Plaintiff's theory that the entire staff covered up the assault was without merit. Finally, Magistrate Judge Treece recommended that the Court dismiss Plaintiff's claim that he was attacked in retaliation for filing claims against Defendants Talbot's and Smith's co-workers because Plaintiff failed to allege when he filed such grievances.

Plaintiff objects to these recommendations, asserting, in conclusory terms, that his pleadings are sufficient to withstand Defendants' motion for summary judgment.

There is nothing in the record upon which this Court could base a finding that Defendants acted with a "sufficiently culpable state of mind" or that the injuries that Plaintiff sustained were "harmful enough" to establish a constitutional violation. Moreover, not only has Plaintiff failed to come forward with any facts to substantiate his claims against Defendants Talbot and Smith, but the documentary evidence demonstrates that Plaintiff did not file a grievance about the excessive use of force. Accordingly, the Court grants Defendants' motion for summary judgment and dismisses Plaintiff's claims against Defendants Talbot and Smith.

### E. Recusal

In his objections, Plaintiff asserts that Magistrate Judge Treece should have recused himself because of a conflict of interest arising out of his involvement in one of Plaintiff's prior cases when Magistrate Judge Treece was an Assistant Attorney General for the State of New York. [6]

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In particular, a judge must disqualify himself "[w]here he has a personal bias or prejudice concerning a party" in the case before the court. 28 U.S.C. § 455(b)(1). "In determining whether recusal is warranted, the test of impartiality is 'what a reasonable person, knowing and understanding

all the facts and circumstances, would believe.' " *S.E.C. v. Grossman,* 887 F.Supp. 649, 658 (S.D.N.Y.1995) (quoting *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1309 (2d Cir.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989)) (other citation omitted).

In support of his argument, Plaintiff asserts that Magistrate Judge Treece was the Assistant Attorney General who represented the defendants in one of Plaintiff's previous cases, *Davidson v. Henderson,* 90-CV-1226. *See* Dkt. No. 61 at ¶ 6. Plaintiff also states that he is well-known in the Attorney General's office and, as such, Magistrate Judge Treece must have recognized his name. *See id.* at ¶ 10. Finally, Plaintiff notes that, in his Report-Recommendation, Magistrate Judge Treece listed all of Plaintiff's cases and, thus, should have recognized that he had handled at least one of them. *See id.*

**\*8** The Court is not convinced that these allegations are sufficient to support a conclusion that Magistrate Judge Treece's impartiality could reasonably be questioned. The Court need not decide this issue, however, because it is this Court, not Magistrate Judge Treece, that is the final decision maker; and, in that capacity, this Court has conducted a *de novo* review of Plaintiff's claims and reached the above-stated conclusions independently of those of Magistrate Judge Treece.

## III. CONCLUSION

After reviewing Magistrate Judge Treece's March 31, 2005 Report-Recommendation and Order, Plaintiff's objections thereto, the relevant parts of the record and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Treece's March 31, 2005 Report-Recommendation and Order is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED;** and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 1877144

Footnotes

1   Plaintiff filed his original complaint on April 3, 2001, *see* Dkt. No. 1, and an amended complaint on June 25, 2001, *see* Dkt. No. 6.

2   Magistrate Judge Treece noted that Plaintiff had omitted Defendant Leonard from both the caption and the "parties" section of his Second Amended Complaint, which replaced *in toto* all previous pleadings. *See* Report-Recommendation and Order at 15.

3   In his Motion for Injunctive Relief, Plaintiff also requested the Court's aid in effecting service on the Estate of Dann. Plaintiff has correctly substituted the Estate of Dann in place of Defendant Dann, the former Superintendent of Auburn Correctional Facility, who is deceased. Service on the Estate of Dann was accomplished; therefore, the Court has jurisdiction over this Defendant.

4   It appears that Defendant United Health Care has a contract with DOCS to provide inmate medical services.

5   Although the Court has concluded that Plaintiff failed to exhaust his administrative remedies, it will, nonetheless, address the merits of his claims against those Defendants upon whom he successfully effected service of process.

6   Magistrate Judge Treece did not have the opportunity to address this issue because Plaintiff raised this argument for the first time in his objections.

End of Document                                        © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2001 WL 34121400 (C.A.2) (Appellate Brief)
United States Court of Appeals,
Second Circuit.

Christopher NEAL, Plaintiff-Appellant,

v.

Glenn S. GOORD, Commissioner, Department of Correctional Services, State of New York; Walter Kelly, Superintendent, Attica C.F.; Sergeant(s) Buehler, Hirsch, Attica C.F.; Correctional Officer(s) Storres, Barker, Hansen, Attica C.F.; Doctor(s) Takos and Stephen Laskowski, Attica C.F., Defendants-Appellees.

No. 99-0253.
February 6, 2001.

On Appeal from the United States District Court for the Western District of New York

**Amicus Brief**

Eliot Spitzer, Attorney General of the State of New York, The Capitol, Albany, New York 12224, Telephone: (518) 474-8352.

Nancy A. Spiegel, Assistant Solicitor General, Martin A. Hotvet, Assistant Solicitor General, of Counsel.

**\*i TABLE OF CONTENTS**

Preliminary Statement ................................................................................................................ 1
Issues Presented ......................................................................................................................... 2
Statement of the Case ................................................................................................................ 2
Original Complaint .................................................................................................................... 2
The April 30, 1999 District Court Order ................................................................................... 3
Amended Complaint .................................................................................................................. 4
The August 11, 1999 District Court Order ................................................................................ 5
Motion for Reconsideration ...................................................................................................... 5
SUMMARY OF ARGUMENT .................................................................................................. 6
ARGUMENT
The complaint was properly dismissed for failure to exhaust as required by 42 U.S.C. § 1997e(a) ....... 6
1. Exhaustion must be completed prior to initiation of the lawsuit ...................................................... 7
2. The allegations of delayed medical treatment in the complaint concern a condition of confinement within the meaning of section 1997e(a) ........................................................................................... 9
Conclusion ................................................................................................................................. 14

**\*ii TABLE OF AUTHORITIES**

*Cases*

Alexander v. Hawk, 159 F.3d 1321 (11th Cir. 1998) ................................. 9
Beeson v. Fishkill Correctional Facility, 28 F. Supp. 2d 884 (S.D.N.Y. 1998) ........................................................................................................ 13
Brown v. Toombe, 139 F.3d 1102 (6th Cir. 1998) .................................... 9
Carter v. Kiernan, 1999 WL 14014 at 3 (S.D.N.Y. 1999) ......................... 11
Chelette v. Harris, 229 F.3d 684 (8th Cir. 2000) ...................................... 12
Estelle v. Gamble, 429 U.S. 97 (1976) ..................................................... 12
Farmer v. Brennan, 511 U.S. 825 (1994) ................................................. 13
Jenkins v. Haubert, 179 F.3d 19 (2d Cir. 1999) ....................................... 10
Lawrence v. Goord, slip op. at 5-6 (2d Cir. January 17, 2001) .................. 6-7,10,12
Lindh v. Murphy, 520 U.S. 320 (1997) ..................................................... 13
Martin v. Hadix, 527 U.S. 343 (1999) ...................................................... 13

McCarthy v. Madigan, 503 U.S. 140 (1992) ................................................ 7

McNeil v. United States, 508 U.S. 106 (1993) ........................................... 9

Nussle v. Willette, 224 F.3d 95 (2d Cir. 2000) pet. for cert. filed, 6,10,11,12
November 22, 2000

Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532 (7th Cir. 1999) ...... 8-9,10

Rosewell v. LaSalle National Bank, 450 U.S. 503 (1981) ........................ 13

Salahuddin v. Mead, 174 F.3d 271 (2d Cir. 1999) .................................... 8

Snider v. Melindez, 199 F.3d 108 (2d Cir. 1999) ..................................... 8

Wilson v. Seiter, 501 U.S. 294 (1991) ....................................................... 12

**\*iii** *Federal Statutes*

42 U.S.C.

§ 1997e(a) ................................................................................................... Passim

§ 1997e(e) ................................................................................................... 13

§ 1983 ......................................................................................................... 2, 6

*State Regulations*

7 N.Y.C.R.R.

Part 701 ...................................................................................................... 7

§ 701.2(a-f) ................................................................................................ 7

§ 701.4(a) .................................................................................................... 7

§ 701.7(a) .................................................................................................... 7

§ 701.7(a)(3) ............................................................................................... 7

§ 701.7(a)(4)(v) .......................................................................................... 7

§ 701.7(4) .................................................................................................... 7

§ 707.7(b) .................................................................................................... 7

§ 707.7(c) .................................................................................................... 7

*State Statute*

New York Correction Law § 139 ............................................................... 7

*U.S. Constitution*

Eighth Amendment .................................................................................... 12

*Miscellaneous*

McKinney's Consol. Laws of New York, Book 10B, p. 85 (1999-2000 14
Interim Pocket part) ..................................................................................

### **\*1** *Preliminary Statement*

This is an appeal from a judgment of the United States District Court for the Western District of New York (Siragusa, J.), filed August 12, 1999, which, sua sponte, dismissed the complaint without prejudice. Because the defendants have never been served and do not waive their rights in this regard, the Attorney General submits this brief as an amicus.

### **\*2** *Issues Presented*

1. Whether 42 U.S.C. § 1997e(a) requires that available administrative remedies be fully exhausted prior to commencement of an action under 42 U.S.C. § 1983.

2. Whether a complaint alleging delayed medical treatment implicates "conditions of confinement" within the meaning of 42 U.S.C. § 1997e(a).

### *Statement of the Case*

### *Original Complaint*

Plaintiff, an inmate in the custody of the New York State Department of Correctional Services (DOCS), commenced this action under 42 U.S.C. § 1983 by pro se complaint dated April 1, 1999 (Docket No. 1, A3-9; *see* Docket No. 3-6,

A13-58 [1] ). Plaintiff claimed that defendants, all of whom are DOCS employees, had violated his constitutional rights by depriving him of his property, including religious items and legal papers, and requiring him to wear dirty clothing; defendants also neglected to provide him with his alternative meals (A5-6). Plaintiff sought compensatory and punitive damages and a transfer out of Attica Correctional Facility (A9). Plaintiff also filed a motion **\*3** for a preliminary injunction requiring him to be transferred to another correctional facility (A13-58).

### *The April 30, 1999 District Court Order*

In an order dated April 30, 1999 (A59-72), the court "[l]iberally interpreted plaintiff's papers" as embracing any claims suggested in the complaint or any of the exhibits annexed to his motion for preliminary injunctive relief (A65). With respect to the alleged deprivation of personal property and legal materials, the court found the claims meritless and dismissed them with prejudice (A63-64). With respect to the Eighth Amendment claims the court discerned regarding the denial of clean clothing and bedding and personal hygiene items (A65-67), medical treatment (A67) and failure to protect (A67-68), as well as the First Amendment claim for the deprivation of religious items and alternative meals (A68-69), the court found all of these insufficiently pleaded; they were subject to dismissal for failure to identify a personally responsible defendant and also for failure to specify the duration of the deprivation (A65-66). As to all of these claims, the court allowed plaintiff to include them in an amended complaint, but reminded him that he must show that "he fully exhausted his administrative remedies regarding each of the claims, or explain why he did not do so" (A67, *see* A68, 69).

### **\*4** *Amended Complaint*

Plaintiff filed an amended complaint dated May 17, 1999 (Docket No. 9, A76-84; *see* Docket No. 10, A85-172). He renewed the earlier claims. He alleged there was an officer at Attica who had threatened to harm him (A81). He alleged he had no change of clean clothes from March 9 to March 22, 1999, that he was placed in an unhygienic cell from March 9 to April 8, 1999 and that he had not received his religious alternative meal since May 5 (A81). He also alleged that his requests for stronger medication for his severe lower back pain had been repeatedly denied, he did not receive physical therapy until May 1, 1999, and he was not allowed the special boots and sneakers he needed (A82).

With respect to exhaustion, he alleged that he "had grieved some issues which were dismissed or sent back to plaintiff * * * and plaintiff then decided to write the Superintendent of Attica and Commissioner of Correctional Services" (A82). Annexed to the complaint were an assortment of grievances, complaints and letters, only some of which related to the claims alleged in the complaint (A87-172). There was no indication that any of these grievances had been pursued to completion by an appeal to the Central Office Review Committee.

### **\*5** *The August 11, 1999 District Court Order*

In a decision and order dated August 11, 1999 (A187-191), the court dismissed the amended complaint for failure to exhaust as required by 42 U.S.C. § 1997e(a). The decision again generously construed the amended complaint and exhibits to state numerous claims (A188-189). The court concluded;
"an examination of the exhibits plaintiff attached to his letter affidavit * * * demonstrates that he did not exhaust his administrative remedies for his complaints *prior to* his filing of the complaint in this matter on April 7, 1999. Plaintiff's claims clearly concern prison conditions, and, thus his failure to have exhausted his administrative remedies before bringing this action is fatal to his claims" (A191, emphasis in original).

### *Motion for Reconsideration*

Plaintiff sought to file another amended complaint on August 23, 1999, which the court construed as a motion for reconsideration (Docket No. 15, A199-213). Plaintiff annexed a number of final decisions of the Central Office Review Committee with respect to various grievances he had filed (A209-213).

The court denied relief in a decision and order dated September 24, 1999 (A214-215). The court reasoned that

> [t]he information plaintiff provides indicates that a number of his grievances were ultimately fully grieved, but the grievance materials themselves demonstrate that the final resolution of them occurred *after* the case had been opened on April 7, 1999. Plaintiff's new submission thus fails to comply with the 42 U.S.C § 1997e(a) *6 requirement that he must have fully exhausted his administrative remedies *before* he initiated his action in this Court. (A15, emphasis in original).

### SUMMARY OF ARGUMENT

The complaint was properly dismissed for failure to exhaust as required by 42 U.S.C. § 1997e(a). The record demonstrates that plaintiff had not secured a final decision on his grievances prior to the filing of suit. Plaintiff's failure to exhaust was not excused on the ground that the alleged deprivation of medical care at issue was not a "condition of confinement" within the meaning of the statute.

Because the court below dismissed the complaint for failure to exhaust, review here is de novo. *Nussle v. Willette,* 224 F.3d 95, 97 (2d Cir. 2000) *pet. for cert. filed,* November 22, 2000.

### ARGUMENT

### THE COMPLAINT WAS PROPERLY DISMISSED FOR FAILURE TO EXHAUST AS REQUIRED BY 42 U.S.C. § 1997e(a).

Section 1997e(a) mandates the exhaustion of available remedies prior to commencement of a section 1983 action with respect to prison conditions. [2] *See Lawrence v. Goord,* slip op. *7 at 5-6 (2d Cir. January 17, 2001); *see also, McCarthy v. Madigan,* 503 U.S. 140, 144 (1992) ("[w]here Congress specifically mandates exhaustion is required"). New York Correction Law § 139 and Title 7 N.Y.C.R.R. Part 701 provide a comprehensive grievance procedure. *See Lawrence v. Goord,* slip op. at 5. The New York procedures cover the full range of prison conditions. *See* 7 N.Y.C.R.R. § 701.2(a-f). The regulations provide for an initial complaint to the facility inmate grievance resolution committee (IGRC); this is called the "First step." Section 701.7(a). The IGRC is a five person body consisting of two voting staff members, two voting inmates and a non-voting chairperson. Section 701.4(a). If there is not an informal resolution (*see* section 701.7[a] [3]), the full IGRC must "hear" the complaint within seven working days of receipt. Section 701.7(4). A written decision is required within two days of the hearing. Section 701.7(a)(4)(v). The next stage, the "Second step," is an appeal to the superintendent. Section 707.7(b). The final stage, the "Third step," is a further appeal to the Central Office Review Committee for a final decision that is required to be rendered within 20 days of receipt of the appeal. Section 707.7(c).

#### 1. *Exhaustion must be completed prior to initiation of the lawsuit.*

Plaintiff had clearly failed to show that he had exhausted administrative remedies with respect to any of his claims when *8 the court ruled on his amended complaint in its decision and order of August 11, 1999. Although directed by the court in its earlier order to demonstrate full exhaustion of his claims, plaintiff failed to show a single Central Office Review Committee decision on any of them. Although he attached such decisions to his subsequent papers, which were generously construed as a motion for reconsideration by the lower court, they do not help him. All of them, including the

two relevant to the claims raised by the amended complaint (A211 [the repair of his wall jack]); A212 [physical therapy for mild lower back strain]) came after he filed his suit on April 9, 1999 (Docket No. 1).

Plaintiff takes the position that the subsequent exhaustion was sufficient (Brief, Point II). This is not so. Dismissal was proper; plaintiff's remedy was to bring a new action. *See Snider v. Melindez,* 199 F.3d 108, 111-112 (2d Cir. 1999) ("a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit"). The court below correctly ruled that section 1997e(a), which provides that "no action shall be brought * * * until such administrative remedies * * * are exhausted," requires exhaustion prior to the commencement of the action. *See Salahuddin v. Mead,* 174 F.3d 271, 274-275 (2d Cir. 1999) ("Giving this phrase its most natural construction, it is a command that governs the circumstances in which an action yet to be initiated may be brought."); **\*9** *Perez v. Wisconsin Dept. of Corrections,* 182 F.3d 532, 538 (7th Cir. 1999) ("we agree * * * that a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed"); *Alexander v. Hawk,* 159 F.3d 1321 (11th Cir. 1998) (same); *Brown v. Toombe,* 139 F.3d 1102 (6th Cir. 1998) (same).

The Seventh Circuit in *Perez* cited *McNeil v. United States,* 508 U.S. 106 (1993), where the statute involved provided that an "'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." 508 U.S. at 107. The Supreme Court read this provision to require "complete exhaustion" *before* invoking the judicial process and directed dismissal of the action although the administrative review procedures had in fact been completed shortly after the suit was filed. The Court reasoned:

"[a]lthough the burden may be slight in an individual case, the statute governs the processing of a vast multitude of claims. The interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command." 508 U.S. at 112.

This reasoning applies fully to section 1997e(a) as well.

### 2. *The allegations of delayed medical treatment in the complaint concern a condition of confinement within the meaning of section 1997e(a).*

Plaintiff argues principally (Brief, Point I) that exhaustion was not required under section 1997e(a) because the **\*10** complaint alleged that plaintiff had been deprived of medical treatment in an apparent emergency, which is not a claim with respect to prison conditions. This argument fails because, among other things, it completely mischaracterizes the claim.

It is true that caselaw in this circuit establishes that exhaustion under section 1997e(a) is not required when the gravamen of the lawsuit is a "single or momentary" act of retaliation or excessive force; that is so because such individual acts of retaliation or beatings are not "conditions" of confinement within the meaning of section 1997e(a). *Lawrence v. Goord,* slip op. at 6 (January 17, 2001) (retaliation); *Nussle v. Willette,* 224 F.3d 95, 101 (2d Cir. 2000), *pet. for cert. filed* November 22, 2000 (excessive force). Neither *Lawrence* nor *Nussle* suggest, however, that alleged deprivations of medical care are not subject to the general rule requiring exhaustion. Rather, it seems clear that such deprivations involve prison "conditions" within the common meaning of the phrase. *See Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir. 1999) ("'conditions of confinement' * * * has a plain meaning. It quite simply encompasses all conditions under which a prisoner is confined for his term of imprisonment. These include * * * the deprivation of exercise, medical care, adequate food and shelter, and other conditions that, if improperly imposed, could violate the constitution."); *Perez v. Wisconsin Dep't of Corrections,* 182 F.3d 532, 534 (7th Cir. 1999) **\*11** ("complaints about medical treatment in prison are complaints about 'prison conditions'"). *Nussle* itself recognized as much. *See* 224 F.3d at 101, quoting *Carter v. Kiernan,* 1999 WL 14014 at 3 (S.D.N.Y. 1999) ("The ordinary, contemporary, common meaning of the phrase 'prison conditions' refers to such things as medical treatment, food, clothing, and the nature and circumstances of the housing available in prison.")

Plaintiff portrays the claimed deprivation at issue as "a single, momentary and particular incident of misconduct by correctional staff with severe consequences for Mr. Neal's health and physical well being" (Brief, p. 13) to try to bring it within the ambit of *Nussle.* This utterly mischaracterizes the claim. Plaintiff did not claim an emergency or momentary incident. Rather, the amended complaint alleged that when he was transferred to Attica, his request for stronger medication was denied, an order for physical therapy was not made until May 1, and an x-ray, which a doctor ordered, was not taken (A83). The gravamen of the complaint was that two doctors violated his rights by "failing to provide plaintiff with adequate medical attention" (A79). That no "momentary" incident is at issue is confirmed by the grievance he filed on May 12, 1999. In that complaint, he sought "(t)o receive my physical therapy for my severe back pains * * * This pain and limited motion had been explained to medical 3 1/1 months now." (A212). Assuming arguendo that plaintiff sufficiently alleged a denial of medical **\*12** care under the Eighth Amendment, *see Estelle v. Gamble,* 429 U.S. 97 (1976), it certainly was not a momentary act akin to a beating. Rather, it was an alleged failure over time to provide needed treatment for a painful condition. *See Chelette v. Harris,* 229 F.3d 684 (8th Cir. 2000) (exhaustion required where the inmate's "continuing pain" from a wrist injury was the basis for the claim of inadequate medical care).

*Nussle* and *Lawrence* should not be read to mean that the exhaustion requirement does not apply whenever the deprivation in issue results from a specific act or omission affecting an individual inmate rather than a prison policy per se. *Wilson v. Seiter,* 501 U.S. 294, 299 (1991), flatly rejected this idea:

The concurrence would distinguish these cases on the ground that they did not involve "conditions of confinement" but rather "specific acts or omissions directed at individual prisoners." *Post,* at 309. It seems to us, however, that if an individual prisoner is deprived of needed medical treatment, that is a condition of *his* confinement, whether or not the deprivation is inflicted upon everyone else. Undoubtedly deprivations inflicted upon all prisoners are, as a policy matter, of greater concern than deprivations inflicted upon particular prisoners, but we see no basis whatever for saying that the one is a "condition of confinement" and the other is not."

Most prisoner cases involve specific acts or omissions directed at the individual plaintiff; it is relatively unusual for such suits to involve questions of prison policy per se. It simply is not plausible that, if Congress had wanted to create a **\*13** wholesale exception to the exhaustion requirement for acts affecting a particular inmate, it would have been so "delphic." *See Lindh v. Murphy,* 520 U.S. 320, 332 (1997); *see also, Rosewell v. LaSalle National Bank,* 450 U.S. 503, 504, 524 (1981) ("If Congress had meant to carve out such an expansive exception, one would expect to find some mention of it."); *Martin v. Hadix,* 527 U.S. 343, 354 (1999) (rejecting a proposed construction for 42 U.S.C. § 1997e(e) because Congress "could have used language more obviously targeted" had such been intended).

Such a reading of the statute would undermine the policy considerations underlying the exhaustion requirement. Inmates are "well advised to take advantage of internal prison procedures for resolving grievances. When these procedures produce results, they will typically do so faster than judicial processes can. And even when they do not bring constitutionally required changes, the inmate's task in court will obviously be much easier." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994).

"Strict adherence to the PLRA's exhaustion requirement will likely result in a more efficient grievance procedure and, as a consequence, lead to the improvement of prison conditions." *Beeson v. Fishkill Correctional Facility,* 28 F. Supp. 2d 884, 895 (S.D.N.Y. 1998). "It is generally recognized that an effective and impartial grievance system for the timely resolution of inmate complaints is important for the safety, security, and good order of the facility. The McKay Commission, appointed to **\*14** investigate the causes of the Attica uprising, concluded that a major contribution to inmate tension was the lack of procedures to resolve inmate complaints in a nonviolent manner." McKinney's Consol. Laws of New York, Book 10B, p. 85 (1999-2000 Interim Pocket Part). That was the impetus for the adoption of New York's grievance system.

**CONCLUSION**

**THE JUDGMENT SHOULD BE AFFIRMED.**

Footnotes

1      Numbers in parentheses marked A refer to pages in the Plaintiff-Appellant's Appendix.

2      Section 1997e(a) provides: No action shall be brought with respect to prison conditions under section 1983 * * * * by a prisoner * * * until such administrative remedies as are available are exhausted.

End of Document      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3349316
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michel Toliver, Plaintiff,

v.

J. Stefinik, Correction Officer, Shawangunk
Correctional Facility; J. Gardner, Lieutenant
Hearing Officer, Shawangunk Correctional
Facility; Stone, Corrections Officer, Shawangunk
Correctional Facility; Aube, Sgt. in House Unit,
Shawangunk Correctional Facility; Gaye (John
Doe), Corrections Officer, Shawangunk Correctional
Facility; Keys, Corrections Officer, Shawangunk
Correctional Facility; L. Pingott, Captain (Security),
Shawangunk Correctional Facility; D. Degraff,
Corrections Officer, Shawangunk Correctional
Facility; Sergeant Preston, Sergeant Corrections,
Shawangunk Correctional Facility; R. Cutler,
Corrections Officer, Shawangunk Correctional
Facility; Budziszewski, Corrections Officer,
Shawangunk Correctional Facility; R. Kane,
Corrections Officer, Shawangunk Correctional
Facility; C.O. North; J. Peterson, Defendants.

9:12-CV-00077
|
Signed 06/15/2016

**Attorneys and Law Firms**

MICHEL TOLIVER, 464 Hudson Street, #222, New
York, New York 10014, Plaintiff Pro Se.

OFFICE OF THE NEW YORK, STATE ATTORNEY
GENERAL, The Capitol, OF COUNSEL: CATHY Y.
SHEEHAN, AAG, Albany, New York 12224, Attorneys
for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

**\*1** On January 17, 2012, Plaintiff commenced this civil
rights action, pursuant to 42 U.S.C. § 1983, alleging that
twenty employees of the New York State Department

of Corrections and Community Supervision ("DOCCS")
violated his constitutional rights during his confinement at
the Shawangunk Correctional Facility ("Shawangunk").
*See* Dkt. No. 1. By Decision and Order dated May
3, 2012, this Court dismissed, *sua sponte*, Defendants
Schneiderman, Bellamy, and Prack from the action
because the complaint did not state facts suggesting their
personal involvement in the alleged violations of Plaintiff's
constitutional rights. *See* Dkt. No. 9 at 8-10.

On June 28, 2012, Plaintiff filed an amended complaint
(Dkt. No. 27), which, by Decision and Order dated
December 6, 2012 (Dkt. No. 85), this Court accepted
for filing against seventeen of the original Defendants, as
well as Correction Officer ("C.O.") North, who was not
named in the original complaint. Liberally construed, the
surviving claims in Plaintiff's amended complaint include
(1) a First Amendment claim, based on Defendants'
alleged filing of false misbehavior reports against Plaintiff,
in retaliation for his pursuit of complaints, grievances,
appeals, and Article 78 actions; (2) an equal protection
claim based on alleged discrimination against Plaintiff
because of his race, disability, and/or sexual orientation;
(3) a conspiracy claim related to the retaliation and
discrimination claims; (4) a Fourteenth Amendment claim
alleging denial of procedural due process in connection
with various disciplinary proceedings; and (5) an Eighth
Amendment claim for failure to provide adequate medical
care. Dkt. No. 27 at 8-9; Dkt. No. 35. Plaintiff seeks both
monetary and injunctive relief. Dkt. No. 27 at 14.

Defendants filed a motion, pursuant to Fed. R. Civ.
P. 12(b)(6), seeking dismissal of Plaintiff's amended
complaint in its entirety, on behalf of all but one of
the remaining Defendants. [1] *See* Dkt. No. 134. Plaintiff
responded to the motion to dismiss, and defense counsel
chose not to file a reply. Dkt. No. 150. On November
17, 2014, Magistrate Judge Baxter issued a Report-
Recommendation recommending that the Court grant-
in-part and deny-in-part Defendants' motion to dismiss.
Dkt. No. 155. This Court adopted Magistrate Judge
Baxter's November 17, 2014 Report-Recommendation,
dismissing Plaintiff's conspiracy claim and all claims
against Defendants Fischer, Maly, and LeClaire.

This Court has previously found that, in litigating this
case, Plaintiff has made numerous

abusive and frivolous filings, which have included more than twenty motions, for preliminary injunctive relief, eight motions to amend the amended complaint, several requests for sanctions, repeated motions to compel discover seeking evidence which is clearly irrelevant to the matter at hand, numerous motions for reconsideration of the Court's denials of Plaintiff's frivolous motions, and countless appeals to this Court of Magistrate Judge Baxter's denials of his frivolous requests.

**\*2** *See* Dkt. No. 233. Since Defendants filed their summary judgment motion, Plaintiff has filed several additional motions to amend or supplement his amended complaint, which this Court denied as frivolous, vexatious, and in clear contravention of repeated notices to Plaintiff "that the Court will not permit [him] to amend the amended complaint in this now four-year old case." *See* Dkt. Nos. 244, 246. Plaintiff filed two Interlocutory Appeals both of which were dismissed by the Second Circuit. *See* Dkt. Nos. 252, 256.

On March 22, 2016, Magistrate Judge Andrew T. Baxter issued a Report-Recommendation recommending that Defendants' summary judgment motion be granted in full.[2] *See* Dkt. No. 249. Specifically, Magistrate Judge Baxter found that Plaintiff's retaliation, equal protection, and Eight Amendment medical indifference claims should be dismissed without prejudice for failure to exhaust all available administrative remedies. *See id.* Further, Magistrate Judge Baxter recommended dismissing Plaintiff's procedural due process claims with prejudice because Plaintiff's factual allegations failed to implicate a liberty interest that would warrant due process protection.

Currently before this Court is Magistrate Judge Baxter's Report-Recommendation, to which neither party has objected.

## I. DISCUSSION

### A. Standard

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding pro se, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point") (citation omitted). A pro se litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a pro se party's failure to object to a report-recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

**\*3** In the present matter, Magistrate Judge Baxter provided Plaintiff adequate notice that he was required to file any objections to the Report-Recommendation, and specifically informed him that failure to object to any portion of the report would preclude his right to appellate review. *See* Dkt. No. 249 at 26. Specifically, Magistrate Judge Baxter informed Plaintiff that "**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.
*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72." Dkt. No. 249 at 26.

Magistrate Judge Baxter clearly provided Plaintiff with sufficient notice of the consequences of failing to object to the Report-Recommendation. Although Plaintiff requested and was granted two extensions of time to file objections, no objections have been filed.

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and, based on the undisputed facts, judgment for the movant is warranted as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c) (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated

to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment." *Kotler v. Fischer*, No. 9:09-CV-01443, 2012 WL 929823, *12 (N.D.N.Y. Mar. 19, 2012) (citations omitted). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B. Exhaustion**

**\*4** The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1983; 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *see, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to Central Office Review Committee ("CORC"), which makes the final determination within the administrative review process. *See id.* at § 701.5(d). If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to § 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). When a plaintiff presents a claim arising "directly out of a disciplinary or administrative segregation hearing ... (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted); *see also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim may be initially filed. *See, e.g., Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

**\*5** When the Second Circuit decided *Giano*, it also decided four other related cases, further clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and carved out particular instances in which the requirement could be waived or excused. *See Hemphill*, 380 F.3d at 686; *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); *Ortiz v. McBride*, 380 F. 3d 649 (2d Cir. 2004). Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement: (1) whether the administrative remedies were available to the inmate; (2) whether the defendants' own actions inhibited exhaustion, estopping them from raising the defense of exhaustion; (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). Although the Second Circuit has "questioned," without deciding, whether *Hemphill* remains good law after *Woodford*, it has applied the three-part inquiry to recent cases. *See, e.g., Heyliger v. Gebler*, 624 Fed. Appx. 780, 782-83 (2d Cir. 2015); *Davis v. State of New York*, 311 Fed. Appx. 397, 399 (2d Cir. 2009); *Snyder v. Whittier*, 428 Fed. Appx. 89, 91 (2d Cir. 2011).

In their answer to the amended complaint, Defendants properly asserted the affirmative defense that Plaintiff failed to exhaust his administrative remedies prior to bringing this federal civil rights action. *See* Dkt. No. 171 at 4. Plaintiff's argument that Defendants waived their right to assert an exhaustion defense by not raising it in their pre-answer motion to dismiss is without merit. *See* Dkt. No. 242-1 at 12; *Villante v. VanDyke*, 93 Fed. Appx. 307, 309 (2d Cir. 2004) (explaining that "[f]ederal Rule of Civil Procedure 8(c) requires only that an affirmative defense be included in a responsive pleading, such as an answer, not that it be the subject of a pretrial motion" and finding that the defendants, "having raised the exhaustion defense in their answer, did not waive the defense by failing to include it in their first motion for summary judgment"); *see also Belgrave v. Pena*, 254 Fed. Appx. 384, 387 (2d Cir. 2001) (permitting a defendant to amend its answer to state an exhaustion defense). As Magistrate Judge Baxter correctly found, Defendants did not waive the exhaustion defense by not asserting it in their initial motion to dismiss. *See* Dkt. Nos. 104, 171.

Defendants have submitted an affidavit from Michael Cunningham, the supervisor of the Inmate Grievance

Program ("IGP") at Shawangunk listing all of the grievances filed by Plaintiff between February 2011 (the date of Plaintiff's transfer to Shawangunk) and July 2012. *See* Dkt. No. 236-3 at 2. Additionally, Defendants submitted a certified copy of a CORC report showing Plaintiff's appeals to CORC of grievances filed between 2011 and 2015. [3] *See* Dkt. No. 236-8 at 3-5. This data indicates that Plaintiff filed five grievances at Shawangunk before he filed his initial complaint on January 17, 2012, and that although he fully exhausted two of those claims, they were not exhausted until February and March of 2011, after Plaintiff filed his initial complaint. *See* Dkt. No. 236-10 at 21.

In his response in opposition to Defendants' motion for summary judgment, Plaintiff claims, in conclusory terms, that he submitted many more grievances than Defendants acknowledged in their motion, which the IGRC refused to file, and that he filed additional appeals to CORC, which CORC refused to accept. *See* Dkt. No. 242-1 at 2-3. Plaintiff's amended complaint, although often vague and confusing, appears to allege that he "circulated" or filed "complaints" or grievances on the following dates: March 9, 22, 25, and 30. *See* Dkt. No. 27 at 11-12. Plaintiff attached a letter to his amended complaint sent by DOCCS Deputy Commissioner LeClaire dated April 26, 2011, in response to a complaint from Plaintiff, which reminds Plaintiff that "[a]llegations of misconduct by facility staff should be directed to facility officials through the established grievance mechanism or by writing to the Superintendent." *See* Dkt. No. 27 at 63. Thus, it appears as though Plaintiff may be referring to informal complaints that he failed to properly direct to the established grievance mechanism.

**\*6** Plaintiff has submitted a copy of one formal grievance, dated March 9, 2011, that does not appear to be reflected on Defendants' spreadsheet. In the amended complaint, however, Plaintiff merely alleges that he "circulated" this grievance to "the above named defendants," so it is unclear whether he properly submitted this grievance to IGRC. *See* Dkt. No. 27 at 11, 63; Dkt. No. 236 at 21; Dkt. No. 243-4 at 31. Further, Plaintiff has not submitted any documentation to suggest that he appealed a denial of the March 9, 2011 grievance. *See* Dkt. No. 27 at 11. Finally, whether Plaintiff properly submitted the March 9, 2011, grievance is unimportant as the substance of that grievance was covered, in much greater detail, in Plaintiff's March 10, 2011 grievance,

which was properly submitted to IGRC and appealed. *See* Dkt. No. 236 at 21.

As Magistrate Judge Baxter correctly found, Plaintiff's vague and conclusory allegations that he filed other grievances that were not accepted by the IGRC at Shawangunk do not, in light of the documentation that Defendants have provided about Plaintiff's grievance history, create a factual dispute material to the issue of whether Plaintiff exhausted his administrative remedies before he filed his initial complaint. *See Jeffreys v. City of new York*, 426 F.3d 549, 554 (2d Cir. 2005) (explaining that where a plaintiff, in response to a motion for summary judgment, provides only their "own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account") (quotation and internal citation omitted); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case") (citations omitted).

Similarly, as Magistrate Judge Baxter correctly found, Plaintiff's claim that CORC sometimes refused to accept his appeals does not create a material issue of fact with respect to the exhaustion issue. Plaintiff has submitted two letters, received by him from CORC, dated July 20, 2011, [4] and June 12, 2012, returning papers to him and advising Plaintiff that appeals of grievances must be submitted through the IGRC at his facility, and not sent directly to CORC for review. *See* Dkt. No. 4-2 at 8-9; Dkt. No. 27 at 70. Only the July 20, 2011 letter is relevant to the exhaustion issue in this case because it pre-dates the filing of Plaintiff's initial complaint, whereas the June 12, 2012, letter was sent and received after the commencement of this action. *See* Dkt. No. 4-2 at 9. It is clear that the July 20, 2011 letter refers to Grievance No. 26770-11, which Plaintiff did ultimately appeal to exhaustion. *See* Dkt. No. 236-10 at 21. While CORC's return of Plaintiff's initial inquiry relating to Grievance No. 26770-11 may have delayed CORC's decision, it was Plaintiff's own mistake that would have caused that delay and would not estop Defendants from using the affirmative defense of exhaustion, nor is it a "special circumstance" under the *Hemphill* factors.

Plaintiff's primary argument as to why his failure to exhaust administrative remedies before filing this action should be excused, is that CORC far exceeded the time limits set by DOCCS regulations in denying his final appeal of Grievance No. 26770-11. *See* Dkt. No. 242-1 at 4-8. However, it is well-established law in the Second Circuit that a plaintiff must wait for a final decision from CORC before filing an action, even if CORC's decision is untimely under DOCCS internal rules and regulations. *See Casey*, 2015 WL 8008728, at *6 ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust") (collecting cases); *Guillory*, 2015 WL 268933, at *12 ("although regulations require CORC to respond within thirty days, its failure to do so is not a 'special circumstance' which might defeat an exhaustion defense" (citation omitted)). The numerous grievances pursued by Plaintiff in 2011 and 2012, as well as the two appealed grievance decisions, clearly indicate that Plaintiff had access to, and took advantage of, the grievance process and was thus not inhibited from fully utilizing the grievance process. *See* Dkt. No. 236-10 at 21. Therefore, Plaintiff has failed to establish a material issue of fact with respect to the availability of the administrative grievance remedies that might justify Plaintiff's failure to exhaust the administrative grievance process before filing this action.

**\*7** As Magistrate Judge Baxter correctly found, Plaintiff's retaliation, equal protection, and Eighth Amendment medical claims must be dismissed without prejudice for failure to exhaust the administrative grievance process prior to filing this action. While requiring Plaintiff to initiate a new lawsuit now that at least two of his claims have been fully exhausted may seem judicially inefficient, if the resulting decision is favorable to the plaintiff "the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset." *Neal*, 267 F.3d at 123. Moreover, "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court." *Id.*

### C. Due process claims

Defendant's have not argued that Plaintiff failed to fully appeal the disciplinary hearings challenged in the Amended Complaint. *See* Dkt. Nos. 27, 236. Accordingly, as Magistrate Judge Baxter correctly found, the due process claims cannot be dismissed based on failure to exhaust, and must be addressed on the merits. *See* Dkt. No. 249.

The Fourteenth Amendment to the Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted). These procedural protections include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)) (other citation omitted). Additionally, the hearing officer's findings must be supported by "some" "reliable evidence." *Id.* (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)) (other citation omitted).

To successfully state a claim under section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)); *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In *Sandin*, the Supreme Court held that although states may create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. 483-84 (internal citations omitted).

The Second Circuit has refused to set a bright line rule on when confinement becomes atypical. "In order to determine whether a liberty interest has been affected, district courts are required to examine the circumstances of a confinement ... and to identify with specificity the facts upon which [their] conclusions [are] based." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (citations omitted). While under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin*, the Second Circuit generally takes the position that confinement in a Special Housing Unit ("SHU"), without unusual conditions, for a period of up to 101 days will not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *see Colon v. Howard*, 215 F.3d 227, 231, 232 n.5 (2d Cir. 2000). The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).

**\*8** "Overlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated." *Reynoso v. Selsky*, 292 Fed. Appx. 120, 122 (2d Cir. 2008) (citation omitted). "Generally, it appears from Second Circuit decisions that separate SHU sentences constitute a 'sustained' period of confinement [that may be aggregated] when (1) they are contiguous *and* (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Taylor v. Artus*, No. 9:05-CV-271, 2007 WL 4555932, \*8 (N.D.N.Y. Dec. 19, 2007) (collecting cases) (emphasis in original).

Although all relevant disciplinary proceedings involved Tier II hearings, for which the maximum possible confinement was 30 days of segregated housing or keeplock and would not, therefore, trigger due process protection individually, it is appropriate to aggregate two discrete periods in 2011 for due process analysis purposes. During these two discrete periods, Plaintiff served consecutive terms of confinement exceeding 30 days, and all of Plaintiff's disciplinary hearings at Shawangunk were conducted by the same individual, Defendant Gardner. [5] *See* Dkt. No. 236-10 at 17 (citing N.Y. Comp. Codes R. & Regs. Tit. 7 § 253.7(a)(1)(iii)). [6] When aggregated, these two distinct periods constitute

a 59 day consecutive period of keeplock served between March 14 and May 11, 2011, and a 64 day consecutive period of keeplock served between October 14 and December 16, 2011. *See* Dkt. No. 236-9 at 7-8. However, as Magistrate Judge Baxter correctly found, Plaintiff's liberty interests were not implicated by the disciplinary proceedings challenged in the amended complain, even after aggregating the two consecutive periods of keeplock, given the absence of any allegations from Plaintiff about unusually harsh conditions of his keeplock.

Plaintiff's inmate history does not list two misbehavior reports filed by Defendant Budziszewski, which Defendants included with their motion. *See* Dkt. No. 236-6 at 69, 82-84. Plaintiff contends in his amended complaint that there were additional misbehavior reports filed against him in 2011 which are not reflected on the disciplinary history submitted by Defendants. *See* Dkt. No. 27 at 11, 24, 34-35, 48. Plaintiff, however, does not provide any specific allegations to suggest that he served punishment on disciplinary charges brought against him prior to the filing of his amended complaint on June 26, 2012 beyond that reflected in his disciplinary history or in the other disciplinary records submitted by Defendants in

Plaintiff has not submitted any evidence establishing, or even made any allegations, that the conditions he experienced while serving keeplock sentences at Shawangunk were more harsh than typical keeplock conditions. Therefore, as Magistrate Judge Baxter correctly found, none of the periods of keeplock confinement he served would implicate a liberty interest warranting due process protection. *See, e.g.*, *Holland v. Goord*, No. 05-CV-6295, 2006 WL 1983382, \*7 (W.D.N.Y. July 13, 2006) (finding 77 days in keeplock during which the plaintiff was deprived of TV, phone, packages, and commissary, and was unable to attend Muslim services and classes, did not constitute a liberty interest); *Pilgrim v. Bruce*, No. 9:05-CV-198, 2008 WL 2003792, \*15 (N.D.N.Y. May 7, 2008) (finding that a plaintiff's conclusory allegations, which notably failed to include claims that he was denied food, clothing, bedding, heat, running water, toiletries, or medicine during his 60 days in keeplock, fail to establish that he was subject to more severe conditions than in normal restrictive confinement); *Holmes v. Grant*, No. 03-CIV-3426, 2005 WL 2839123, \*5 (S.D.N.Y. Oct. 25, 2005) (finding that sixty days in the SHU at Shawangunk is "insufficient to constitute a deprivation of a liberty interest").

**\*9** Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's due process claims.

### II. CONCLUSION

After carefully considering Magistrate Judge Baxter's Report-Recommendation, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's March 22, 2016 Report-Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' summary judgment motion is **GRANTED in full**; and the Court further

**ORDERS** that Plaintiff's retaliation, equal protection, and Eighth Amendment medical indifference claims are **DISMISSED** without prejudice; and the Court further

**ORDERS** that Plaintiff's procedural due process claims are **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

### IT IS SO ORDERED.

**All Citations**

Slip Copy, 2016 WL 3349316

---

Footnotes

1   C.O. North, who, by then, was no longer an active DOCCS employee, had not been served with the amended complaint and was not then represented in this action. *See* Dkt. No. 91. C.O. North has since accepted service, and is currently represented by the Attorney General's Office, as are the other remaining thirteen Defendants.

2   Although Magistrate Judge Baxter's March 22, 2016, Report-Recommendation indicates that the Defendants' summary judgment motion should be granted in part, it is clear upon review that all remaining claims in Plaintiff's amended complaint must be dismissed on the grounds stated. Magistrate Judge Baxter found it unnecessary, as does this Court, to address multiple grounds on which to dismiss the same claims. Therefore, the Report-Recommendation actually recommends granting Defendants' summary judgment motion in full, terminating the instant action in its entirety.

3   The information from these two sources was collated in a spreadsheet summarizing Plaintiff's grievance filings and appeals, attached as Appendix A to Defendants' Memorandum of Law. *See* Dkt. No. 236-10 at 20-21.

4   Magistrate Judge Baxter's March 22, 2016, Report-Recommendation refers to this as the July 11, 2011 letter, which was the date on which Plaintiff received an adverse decision to his SHG-26770-11 Grievance; however, the actual letter from Karen Bellamy, Director of IGP, is dated July 20, 2011.

5   Plaintiff began serving more severe disciplinary sentences following disciplinary proceedings in July 2012, but that, and subsequent disciplinary hearings occurred after Plaintiff filed his amended complaint, and are not part of this action. *See* Dkt. No. 236-9 at 6-7.

6   The federal district courts in New York, applying *Sandin*, have consistently held that terms of special housing or "keeplock" of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the due process clause, even in the absence of detailed factual development regarding the conditions of confinement. *See, e.g., Brown v. Secore*, No. 9:08-CV-085, 2010 WL 980233, \*5 (N.D.N.Y. Mar. 15, 2010) (collecting cases).

---

© 2016 Thomson Reuters. No claim to original U.S. Government Works.